IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 22-cv-1866-SKC**

BENJAMIN GATES,
TRAVIS SWARTZ, and
NATIONAL FOUNDATION FOR GUN RIGHTS, INC.

    Plaintiffs,

v.

JARED S. POLIS, in his official capacity as Governor of the State of Colorado

    Defendant.

---

**PLAINTIFFS' MOTION FOR**

**TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION**

---

Plaintiffs submit the following Motion for Temporary Restraining Order and for Preliminary Injunction.

### I. INTRODUCTION

This action challenges the constitutionality of C.R.S. § 18-12-301 *et seq.*, which shall be referred to herein as the "Magazine Ban." The Magazine Ban bans certain firearm magazines that the State admits are not unusual and are held by millions of law-abiding American citizens for lawful purposes. The Second Amendment protects the right of law-abiding citizens to own weapons in common use by law-abiding citizens for lawful purposes. *D.C. v. Heller*, 554 U.S. 570, 627 (2008); *cf. New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 2022 WL 2251305 (U.S. June 23, 2022). Thus, the Magazine Ban is unconstitutional.

Accordingly, Plaintiffs hereby move the Court to enter a Temporary Restraining Order enjoining the State from enforcing this unconstitutional statute. Moreover, Plaintiffs move the Court to enter a preliminary injunction.

## II. FACTS

1.  C.R.S. § 18-12-301(2) defines "large-capacity magazine" to mean a fixed or detachable magazine, box, drum, feed strip, or similar device capable of accepting, or that is designed to be readily converted to accept, more than fifteen rounds of ammunition. C.R.S. § 18-12-302(1) makes it generally a crime to sell, transfer, or possess in the State a "large-capacity magazine." C.R.S. § 18-12-302(2) grandfathers magazines that were owned prior to July 1, 2013, but these magazines may not be transferred to any other person, including by gift or devise to members of a person's own family. Therefore, even for grandfathered magazines the Magazine Ban operates as a rolling generational ban.

2.  The Magazine Ban uses politically charged rhetoric to describe the arms it bans. Declaration of Dudley Brown ¶ 2. The Magazine Ban's characterization of these magazines as "large capacity" is a misnomer. *Id*. Magazines capable of holding more than 15 rounds are standard capacity magazines. *Id*. Plaintiffs refuse to adopt the State's politically charged rhetoric in this Motion. Therefore, for purposes of this Motion, the term "Banned Magazine" shall have the same meaning as the term "large-capacity magazine" in C.R.S. § 18-12-301(2).

3.  *Colorado Outfitters Ass'n v. Hickenlooper*, 24 F. Supp. 3d 1050 (D. Colo. 2014), *vacated and remanded,* 823 F.3d 537 (10th Cir. 2016), was a prior challenge to the Magazine Ban in which the State was a defendant.[1] In that case, the State stipulated as follows:

---

[1] A suit against a state official in her official capacity is equivalent to a suit against the state. *Muscogee (Creek) Nation v. Oklahoma Tax Comm'n*, 611 F.3d 1222, 1229 (10th Cir. 2010).

> More than 300,000,000 firearms are lawfully owned in the United States. A significant percentage of firearms privately owned are semi-automatic, most of which utilize a detachable box magazine. Although the total number is not known, the number of lawfully owned semi-automatic firearms that utilize a detachable box magazine with a capacity greater than 15 rounds is in the tens of millions.

Exhibit A, Stipulated Facts Section to Proposed Final Pretrial Order filed in *Hickenlooper* on January 31, 2014 ¶ 10.

> Although the total number of magazines of any size in the United States is not known, the number of large capacity magazines is in the tens of millions.

*Id.*, ¶ 25.

> Although the total number of magazines of any size in Colorado is not known, the number of large capacity magazines is in the millions.

*Id.*, ¶ 26.

4.  *Rocky Mountain Gun Owners v. Polis*, 2020 CO 66, 467 P.3d 314, was another case in which the State was a party.  In that case, the State stipulated as follows:

> In states without laws regulating magazine capacity, AR-15 platform rifles are usually sold at retail with a detachable box magazine capable of holding up to 30 rounds. In states without laws regulating magazine capacity, the majority of owners of AR-15 platform rifles use magazines with a capacity of 20 and/or 30 rounds.

Exhibit B, "Stipulations" attached to Proposed Trial Management Order, filed in *Rocky Mountain Gun Owners v. Polis* on April 4, 2017 ¶ 10.

> Prior to the effective date of §18-12-301, *et seq*, semi-automatic firearms equipped with detachable box magazines with a capacity greater than 15 rounds were frequently used in Colorado for multiple lawful purposes, including recreational target shooting, competition shooting, collecting, hunting, and were kept for home defense and defense outside the home.

*Id.*, ¶ 13.

> Many full-sized 9mm semi-automatic pistols are sold at retail with magazines with capacities of greater than 15, such as the Glock 17.  The Glock 17 is one of

> the most popular handguns sold in the United States and it is often used by law enforcement personnel.

*Id*., ¶ 17.

> Although the total number of magazines of any size in Colorado is not known, the number of magazines with a capacity greater than 15 rounds is in the millions.

*Id*., ¶ 20.

> Prior to the effective date of §18-12-301, *et seq*., magazines with a capacity greater than 15 rounds were not unusual in Colorado.

*Id*., ¶ 2.

> Through December 2016 there were 41 prosecutions under §18-12-301, *et seq*.,

*Id*., ¶ 29.

5.    Plaintiffs Gates and Swartz are residents of the State of Colorado (the "State") and are law-abiding citizens of the United States. Declaration of Benjamin Gates ("Gates Dec.") ¶ 3; Declaration of Travis Swartz ("Swartz Dec.") ¶ 3.  Gates and Swartz each currently own magazines capable of holding more than 15 rounds of ammunition, which they have possessed lawfully since before July 1, 2013.  *Id*.  Gates and Swartz each seek to (1) acquire putatively banned magazines to replace the magazines he owed prior to July 1, 2013; (2) acquire additional putatively banned magazines; and (3) lawfully transfer his property to others.  *Id*.  In particular, Gates and Swartz each wishes to give and/or devise banned magazines to his family members, which is prohibited by the Magazine Ban.  *Id*.  But for the State's restrictions on commonly used arms, and their reasonable fear of criminal prosecution for violating these restrictions, Gates and Swartz would engage in these activities.  *Id*.

6.    Plaintiff NFGR is a nonprofit membership and donor-supported organization qualified as tax-exempt under 26 U.S.C. § 501(c)(3).  Declaration of Dudley Brown ¶ 3; NFGR seeks to

4

defend the right of all law-abiding individuals to keep and bear arms. *Id*. NFGR has members who reside within the State. *Id*. NFGR represents the interests of its members who reside in the State. *Id*. Specifically, NFGR represents the interests of those who are affected by the Magazine Ban. *Id*. In addition to their standing as citizens and taxpayers, those members' interests include their wish to exercise their constitutionally protected right to keep and bear arms without being subjected to criminal prosecution, and to continue to lawfully possess and/or transfer property that they lawfully obtained. *Id*. But for the State's unlawful prohibition of commonly used arms and their reasonable fear of prosecution for violating these prohibitions, NFGR members would seek to bear arms in public and acquire, keep, possess and/or transfer lawful arms for self-defense and other lawful purposes. *Id*.

### III.  ARGUMENT

**A.      Standard for Granting Temporary Restraining Order and Preliminary Injunction**

**1.      TRO**

The summons and complaint in this matter were served on the Defendants on July 29, 2022. On August 2, 2022, the undersigned spoke to Grant Sullivan of the Colorado Attorney General's office about this motion and emailed the Complaint and this motion to the Attorney General's Office as set forth in the certificate of service below.

A party seeking a TRO must show (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). A showing of probable irreparable harm is the single most important prerequisite for the issuance of a TRO; therefore, the moving party must first demonstrate that such injury is likely before the other

requirements will be considered. *A.K. by & through Moyer v. Cherry Creek Sch. Dist. No. 5*, 2020 WL 2197920, at *2 (D. Colo. 2020), *quoting, First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017).

In this case all of the elements for issuance of a TRO are present. As discussed in detail below, Plaintiffs will suffer irreparable harm to their constitutional rights if the unconstitutional Magazine Ban continues to be enforced. The loss of constitutional freedoms "for even minimal periods of time, unquestionably constitutes irreparable injury." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir.2003) (citation omitted). The third and fourth factors identified in *Roda Drilling*, *supra*, also weigh in favor of Plaintiffs. When a law is likely unconstitutional, the government's interest in enforcing the law does not outweigh that of individuals in securing the protection of their constitutional rights. *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012). Finally, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Id*. at 1132. Plaintiffs have attached a form of TRO.

### 2. Preliminary Injunction

To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest. *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).

It is well-settled that a showing of the infringement of a constitutional right is enough and requires no further showing of irreparable injury. *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 805 (10th Cir. 2019). In the context of constitutional claims, this principle collapses the first and second preliminary-injunction factors. *Id*., at 806.

The third and fourth factors also merge when the government is the opposing party. *Aposhian v. Barr*, 958 F.3d 969, 978, *citing Nken v. Holder*, 556 U.S. 418, 435 (2009).

In a constitutional case, the likelihood of success on the merits will often be the determinative factor. *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014). This is because: (a) the loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury; (b) when a law is likely unconstitutional, the government's interests do not outweigh a plaintiff's interests in having his constitutional rights protected; and (c) it is always in the public interest to prevent violation of a person's constitutional rights. *Id.* Indeed, in constitutional cases whether to grant the injunction often turns on likelihood of success on the merits only, usually making it unnecessary to dwell on the remaining factors. *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (*en banc*) (*per curiam*).

### III. ARGUMENT

The Second Amendment to the United States Constitution declares that "the right of the people to keep and bear arms shall not be infringed." U.S. CONST. amend. II. The Second Amendment guarantees the right of individuals to keep and bear arms. *Heller*, *supra*. The constitutional guarantee applies to the states through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742 (2010). Last month, in *Bruen*, *supra*, the Court elucidated the framework for judicial review of legislative burdens on the right to bear arms.

The Second Amendment protects the right of law-abiding citizens to own weapons in common use by law-abiding citizens for lawful purposes. *Heller, supra*, at 627. Conversely, an arm may be banned only if it is both "dangerous and **unusual**." *Id.* (emphasis added).

"*Heller* refers to 'dangerous' and 'unusual' conjunctively, suggesting that even a dangerous weapon enjoys constitutional protection if it is widely employed for lawful purposes, i.e., not unusual." *Kolbe v. Hogan*, 813 F.3d 160, 178 (4th Cir. 2016), *on reh'g en banc*, 849 F.3d 114 (4th Cir. 2017).[2]

The State stipulated in *Hickenlooper* that the number of "large capacity magazines" is in the tens of millions and that the number of such magazines in Colorado is in the millions. Ex. A, ¶¶ 25, 26. In *Rocky Mountain Gun Owners*, the State stipulated that prior to the Magazine Ban, semi-automatic firearms equipped with detachable box magazines with a capacity greater than 15 rounds were frequently used in Colorado for multiple lawful purposes, including recreational target shooting, competition shooting, collecting, hunting, and were kept for home defense and defense outside the home. Ex. B ¶ 13. It follows that there cannot be the slightest doubt that firearm magazines such as those banned by the Magazine Ban are in common use in the United States and Colorado.

Moreover, in a stipulation that is fatal to the constitutionality of the Magazine Ban, the State stipulated that prior to the Magazine Ban, "magazines with a capacity greater than 15 rounds were **not unusual** in Colorado." Ex. B ¶ 2 (emphasis added). If the Banned Magazines are "not unusual," it follows that it is impossible for them to be both dangerous and unusual. Therefore, under *Heller* these arms are protected by the Second Amendment, and the Magazine Ban, which bans these arms, is unconstitutional.

Finally, the right to keep arms is at its greatest strength in "the home, where the need for defense of self, family, and property is most acute." *Heller,* 554 U.S. at 628. The Magazine

---

[2] Judge Traxler's panel opinion was reversed on rehearing *en banc*. However, after *Bruen*, which rejected the balancing inquiry employed by the *en banc* majority, Judge Traxler's panel opinion almost certainly articulates the current state of the law.

Ban prohibits all forms of possession of any magazine banned by its provisions.  Thus, in Colorado, a law-abiding citizen cannot keep any of these commonly used arms in the home for any reason, including the defense of self and family without fear of criminal prosecution.  And that fear is not theoretical or attenuated.  The State stipulated that scores of people have been prosecuted under the Magazine Ban.  Ex. B ¶ 26.  Accordingly, the conduct being regulated by the Magazine Ban includes an individual's possession of a firearm in the home for self-defense.

The Magazine Ban is similar to a magazine ban that was made subject to a restraining order by this Court last month.  See Temporary Restraining Order issued on July 23, 2022, in *Rocky Mountain Gun Owners, et al. v. Town of Superior*, 22-CV-1685-RM.  For the reasons set forth in Judge Moore's well-reasoned opinion in that matter, a TRO should also be issued in this action.

Plaintiffs are or will be injured by the State's enforcement of the Magazine Ban, because the statute violates Plaintiffs' rights under the Second Amendment by precluding the acquisition, possession, transfer and use of arms that are "typically possessed by law-abiding citizens for lawful purposes."   If not enjoined by this Court, the State will continue to enforce the Magazine Ban in derogation of the citizens of Colorado's constitutional rights.  Plaintiffs have no plain, speedy, and adequate remedy at law.  Damages are indeterminate or unascertainable and, in any event, would not fully redress any harm suffered by Plaintiffs because they are unable to engage in constitutionally protected activity due to the State's present or contemplated enforcement of this statute.

Accordingly, Plaintiffs move the Court immediately to enter a preliminary restraining order and to set this matter for consideration of their motion for preliminary injunction at the earliest time reasonably available to the Court and the parties.

## REQUEST FOR HEARING

Should the Court determine that a hearing regarding the motion for TRO would be useful, Plaintiffs request such a hearing at the earliest possible time. Plaintiffs request a hearing on their motion for preliminary injunction.

Respectfully submitted this 2nd day of August, 2022.

*/s/ Barry K. Arrington*
_____
Barry K. Arrington
Arrington Law Firm
3801 East Florida Avenue, Suite 830
Denver, Colorado 80210
Voice: (303) 205-7870; Fax: (303) 463-0410
Email: barry@arringtonpc.com

Shaun Pearman
The Pearman Law Firm, P.C.
4195 Wadsworth Boulevard
Wheat Ridge Colorado 80033
Phone Number: (303) 991-7600
Fax Number: (303) 991-7601
E-mail: shaun@pearmanlawfirm.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 2, 2022, he emailed the Compliant and a copy of this motion to:

Kathleen L. Spalding at kit.spalding@coag.gov
and

Grant T. Sullivan at grant.sullivan@coag.gov

*/s/ Barry K. Arrington*
_____
Barry K. Arrington