Exhibit B

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO<br>1437 Bannock Street<br>Denver, Colorado  80523<br>Phone Number:  (720) 865-8301 | DATE FILED: April 4, 2017 2:56 PM<br>FILING ID: 72D2C71F637D5<br>CASE NUMBER: 2013CV33879 |
| Plaintiffs:  Rocky Mountain Gun Owners, a Colorado nonprofit corporation, National Association for Gun Rights, Inc., a Virginia non-profit corporation, and John A. Sternberg<br><br>Defendant:  John W. Hickenlooper, in his official capacity as Governor of the State of Colorado | |
| | ▲              COURT USE ONLY              ▲ |
| | Case Number:  2013CV33879<br><br><br>Division 203 |
| **PROPOSED TRIAL MANAGEMENT ORDER** | |

Pursuant to C.R.C.P. § 16(f), IT IS HEREBY ORDERED as follows:

I.   **STATEMENT OF CLAIMS AND DEFENSES**

A.  Nature of the Case.

This case involves Plaintiffs' challenge to certain provisions of C.R.S. § 18-12-301, *et seq*. pursuant to the Colorado Constitution.

B.  Plaintiffs' Claims

Plaintiffs contend that certain provisions of C.R.S. § 18-12-301, *et seq*., violate the guaranty of the right to keep and bear arms set forth in Article II, Section 13 of the Colorado Constitution.

C.  Defendant's Defenses

Defendant contends that the conduct prohibited by C.R.S. § 18-12-301, *et seq.*, is not protected by Article II, Section 13 of the Colorado Constitution.  To the extent that the conduct prohibited by C.R.S. § 18-12-301, *et seq*., does implicate the protections set forth in Article II, Section 13 of the Colorado Constitution, the statute is a reasonable

1

exercise of the Colorado General Assembly's police power, and thus does not violate the constitutional guaranty of the right to keep and bear arms. The statute would also satisfy the intermediate scrutiny test that the federal circuits have adopted in analyzing similar restrictions under the Second Amendment.

## II.     STIPULATED FACTS.

See Exhibit A.

## III.    PRETRIAL MOTIONS

Defendant's March 17, 2017 Motion in Limine is pending.

## IV.    TRIAL BRIEFS

The parties believe that there are controverted legal issues which they anticipate addressing in trial briefs. The deadline for trial briefs is April 17, 2017.

## V.     ITEMIZATION OF DAMAGES OR OTHER RELIEF SOUGHT

Neither party seeks monetary damages. Plaintiffs seek injunctive relief against enforcement of the statute.

## VI.    IDENTIFICATION OF WITNESSES AND EXHIBITS – JUROR NOTEBOOKS

A. Lay Witnesses. C.R.C.P. § 16(f)(3)(VI)(A). Plaintiffs' list of lay witnesses is attached as Exhibit B. Defendant's list of lay witnesses is attached as Exhibit C.

B. Exhibits. C.R.C.P. § 16(f)(3)(VI)(B). Plaintiffs' list of exhibits is attached as Exhibit D. Defendant's list of exhibits is attached as Exhibit E.

C. Expert Witnesses. C.R.C.P. § 16(f)(3)(VI)(A). Plaintiffs' list of expert witnesses is attached as Exhibit F. Defendant's list of expert witnesses is attached as Exhibit G.

D. Juror Notebooks. This matter will be tried to the Court and juror notebooks will not be submitted.

E. Presentation of Testimony. The parties anticipate all testimony will be presented by live witnesses.

## VII. TRIAL EFFICIENCIES AND OTHER MATTERS

Plaintiffs believe that because there will be several complex factual and legal matters implicated by the evidence at trial, written closings would be more efficient and effective than oral closings.  Plaintiffs suggest that the parties submit simultaneous closing briefs and proposed findings of fact, conclusions of law and judgment 14 days after trial and short (no more than 10 pages) simultaneous rebuttal briefs 21 days after trial.

Defendant disagrees with Plaintiff's proposal.  Defendant believes that closing argument would benefit the Court's determination of the issues raised in the case.

The parties believe this matter can be tried in five days.  No party believes any issues should be tried separately.  The parties confirm that they have considered ways in which the use of technology can simplify the case and make it more understandable.

This Trial Management Order shall control the subsequent course of the trial.  Modification to or divergence from the Trial Management Order, whether prior to or during trial, shall be permitted upon a demonstration that the modification or divergence could not with reasonable diligence have been anticipated.  In the event of any ambiguity in the Trial Management Order, the Court shall interpret the Order in the manner which best advances the interests of justice.

DATED this _____ day of April, 2017

BY THE COURT

_____
District Court Judge

APPROVED:

**Attorney for Plaintiffs**

**/s/ Barry K. Arrington**
_____
Barry K. Arrington, #16,486
Arrington Law Firm
3801 East Florida Avenue, Suite 830
Denver, Colorado  80210
Phone Number:  (303) 205-7870
FAX Number:  (303) 463-0410

E-mail:  barry@arringtonpc.com

**Attorneys for Defendant**

**/s/ Matthew D. Grove**
_____
Frederick R. Yarger, #39,479
Kathleen L. Spalding, #11,886
Matthew D. Grove, #34,269
Stephanie Lindquist Scoville, #31,182
Office of the Colorado Attorney General
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, Colorado  80203
Phone Number:  (720) 508-6634
FAX Number:  (720) 508-6032
E-mails:  Fred.Yarger@coag.gov
            Kit.Spalding@coag.gov
            Matt.Grove@coag.gov
            Stephanie.Scoville@coag.gov

4

**EXHIBIT A**
**STIPULATIONS**

The parties stipulate to the following facts:

1. Firearms have been lawfully and privately owned in Colorado since before statehood in 1876 and at all times since.

2. Most handguns are either semi-automatic pistols or revolvers. No currently-manufactured revolvers hold more than 15 rounds. There are also other less popular styles of handguns, such as derringers, and other handguns with a one or two shot capacity. In its data reporting, the ATF classifies these guns as "other" and excludes them from "pistols" and "revolvers," and none currently manufactured has a capacity greater than 15 rounds.

3. Long guns are rifles or shotguns. Some shotguns are single shot and some are double-barreled, and neither of these types of shotguns has an ammunition capacity of greater than 15. Shotguns also come in pump action, lever action, bolt action, and semi-automatic models. Most shotguns have one or two fixed magazine tubes each of 28 inches or less, and are not affected by §18-12-301, *et seq*., C.R.S. (2016) A few shotgun models have magazine tubes longer than 28 inches and a few others models use detachable box magazines which can store more than 8 rounds of ammunition. These latter two types of shotguns are subject to the restrictions in §18-12-301, *et seq*.

4. Rifles may be single shot, bolt action, lever action, pump action, or semi-automatic. There are numerous models of semi-automatic rifles, including those based on the popular AR-15 platform.

5. Some bolt action rifles use detachable box magazines of various sizes, but most hold fewer than 10 rounds. As with any detachable box magazine, such magazines may be of any size. Lever action rifles typically use tube magazines. Lever action rifles with tube magazines and rifles that are capable of operating only with .22 rimfire ammunition are exempt under §18-12-301, *et seq*.

6. In the United States, the number of lawfully owned semi-automatic firearms capable of using a detachable box magazine with a capacity greater than 15 rounds is in the tens of millions.

7. After July 1, 2013, thousands of models and variants of firearms with detachable box magazines remain available for lawful purchase and use for home defense in Colorado. With very few exceptions, every gun that was available before July 1, 2013, is compatible with magazines holding 15 or fewer rounds. Similarly, after July 1, 2013 many models and variants of magazines designed to hold 15 or fewer rounds remain available for lawful purchase and use for home defense in Colorado.

8. In 2011, AR-15 platform rifles accounted for approximately 18% of all rifles made in the United States for the domestic market. Many of these are used by law enforcement officers in the line of duty and many are used by private citizens. There are a large number of other models of semi-automatic rifles, including models from companies such as Ruger and Marlin, which use detachable box magazines and which have been lawfully purchased and used in the United States and Colorado.

9. All AR-15 platform rifles are semi-automatic and all utilize a detachable box magazine.

10. In states without laws regulating magazine capacity, AR-15 platform rifles are usually sold at retail with a detachable box magazine capable of holding up to 30 rounds. In states without laws regulating magazine capacity, the majority of owners of AR-15 platform rifles use magazines with a capacity of 20 and/or 30 rounds.

11. All AR-15 platform rifles are capable of accepting and functioning properly with magazines of 15 or fewer rounds. In Colorado, AR-15 platform rifles are sold at retail with detachable box magazines having capacities of 15 or fewer rounds.

12. §18-12-301, *et seq.* (2016), C.R.S., does not prevent a manufacturer from shipping to Colorado a semi-automatic rifle or pistol without any magazine, or with a magazine that complies with the statute.

13. Prior to the effective date of §18-12-301, et seq,, semi-automatic firearms equipped with detachable box magazines with a capacity greater than 15 rounds were frequently used in Colorado for multiple lawful purposes, including recreational target shooting, competition shooting, collecting, hunting, and were kept for home defense and defense outside the home.

14. Semi-automatic pistols and rifles cannot function as designed without a magazine.

15. Semi-automatic firearms are designed to discharge a bullet for each pull of the trigger, automatically extract and eject the spent cartridge case from the firing chamber, re-cock the firing mechanism, and load a new cartridge into the firing chamber so it can be fired again with another pull of the trigger.

16. Detachable magazines can be purchased independently of firearms, including for use with semi-automatic rifles and semi-automatic pistols.

17. Many full-sized 9mm semi-automatic pistols are sold at retail with magazines with capacities of greater than 15, such as the Glock 17. The Glock 17 is one of the most popular handguns sold in the United States and it is often used by law enforcement personnel. The Glock 17 is also sold with factory magazines with a capacity of ten rounds. Nine millimeter handguns come with a variety of magazine sizes, some of which

have a capacity of 15 or fewer rounds.  Compacts and sub-compact handguns are sold at retail with magazines of 15 or fewer rounds.

18.  Most semi-automatic pistols in calibers of .40 or larger are not sold at retail with magazines capable of holding more than 15 rounds.  Many such magazines are compatible with extenders that add capacity so that the magazines, as extended, hold more than 15 rounds.

19.  No semi-automatic pistols in calibers of .45 are sold at retail with magazines capable of holding more than 15 rounds.

20.  Although the total number of magazines of any size in Colorado is not known, the number of magazines with a capacity greater than 15 rounds is in the millions.  There are also millions of magazines in sizes of 15 rounds or less.

21.  Prior to the effective date of §18-12-301, *et seq*., magazines with a capacity greater than 15 rounds were not unusual in Colorado.

22.  With a few exceptions, manufacturers of semi-automatic pistols that have standard magazines that hold more than 15 rounds also manufacture magazines with a capacity of 15 rounds or less.  Aftermarket manufacturers also make and sell magazines with a capacity of 15 rounds or less.  In the current market, for semi-automatic pistols and rifles for which the standard magazine is greater than 15 rounds and for which a substitute magazine is available, the substitute magazine's capacity is often 10 rounds. Fifteen round magazines also are commercially available for AR-15 platform rifles and some pistols.

23.  Magazines with a capacity of 15 or fewer rounds are manufactured in the United States and are available for purchase in Colorado.  Magazines with removable base pads or baseplates that hold 15 rounds or less are widely available for purchase in retail outlets throughout Colorado.

24.  Many law enforcement agencies, including the Colorado State Patrol and the Federal Bureau of Investigation, issue handguns as duty weapons that have magazines containing 15 or fewer rounds.  Some officers in these agencies are authorized to carry semi-automatic rifles with large capacity magazines in addition to the sidearm issued by their employers.

25.  The distal end of a box magazine is referred to as a baseplate or a basepad. Metal baseplates (on box magazines) and end caps (on tube magazines) may be permanently affixed.  Plastic baseplates (or basepads) are always removable.  The vast majority of handgun magazines sold in the United States and Colorado feature a removable base plate or base pad.

26.  Removable base pads, base plates, and end caps allow for cleaning, maintenance, repair and other functions, such as weighting the magazine.

27. A removable base pad, base plate, floor plate or end cap alone does not increase a magazine's capacity.

28. John A. Sternberg wishes to purchase and possess magazines with capacities of greater than 15 rounds to use for lawful purposes. Members of Rocky Mountain Gun Owners and the National Association for Gun Rights, Inc., wish to purchase and possess magazines with capacities of greater than 15 rounds to use for lawful purposes.

29. Through December 2016 there were 41 prosecutions under §18-12-301, *et seq.*, as outlined in Plaintiffs' Exhibit 1. There is no evidence known to plaintiffs that any person has been prosecuted on the basis of their possession of a magazine with a removable base pad where the magazine has a capacity of 15 rounds or less.

30. Twelve students and one teacher were killed at Columbine High School on April 20, 1999. Seven students were killed by shots coming from one of the assailant's shotguns; three students were killed by shots coming from a 9mm carbine equipped with 10-round magazines; two students were killed by shots coming from a 9mm "TEC9" equipped with magazines capacities of 28 or more rounds. The weapon that was employed to kill the teacher was not determined in the official report.

31. Twelve moviegoers were killed and 58 injured when a shooter opened fire in the Cinemark theater in Aurora, Colorado early in the morning of July 20, 2012. All were killed or injured by either shotgun fire or by semiautomatic rifle fire. The shooter fired six rounds from a shotgun. He then transitioned to a semiautomatic rifle. Using a 100-round drum magazine, the shooter fired 65 rounds at moviegoers from the semiautomatic rifle. The rifle jammed, and while the shooter was attempting to clear the malfunction and reload the rifle with a 30-round magazine, many people escaped from the theater. Apparently unable to clear the malfunction of the rifle, the shooter abandoned the rifle and transitioned to a .40 caliber handgun. Using the handgun, he fired an additional five rounds at fleeing moviegoers before exiting the theater.

32. On December 14, 2012, a shooter opened fire in an elementary school in Newtown, Connecticut, killing 20 children and six adults. Two adults were wounded but survived. The shooter used a semiautomatic rifle with 30-round magazines to kill or wound all the victims. He fired approximately 150 rounds with the rifle. Nine children escaped when the shooter paused to unjam or reload his rifle.

33. According to United States census records, in 1880 the total population of Colorado was 194,327; the population of Pueblo, Colorado was 3,217; and the population of Gunnison, Colorado was 888.

No party intends to concede the relevance of a fact by stipulating to it, and the parties reserve the right to object on relevance and other grounds.