# Attachment A

to the Governor's Motion for Ruling that Fact Stipulations from Previous Cases are not Binding

Proposed Final Pretrial Order, *Colorado Outfitters Association v. Hickenlooper, et al.*, No. 13-cv-01300-MSK-MJW, [ECF # 119] (Jan. 13, 2014)

**October 13, 2022**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-CV-1300-MSK-MJW

COLORADO OUTFITTERS ASSOCIATION *et al.*,

      Plaintiffs,

v.

JOHN W. HICKENLOOPER, Governor of the State of Colorado,

      Defendant.

## PROPOSED FINAL PRETRIAL ORDER

      The parties, by and through their undersigned counsel, hereby file this Proposed Final Pretrial Order, and state as follows:

## 1. DATE AND APPEARANCES

      A final pretrial conference was held in this matter on February 20, 2014 at 3 p.m. The following counsel appeared on behalf of Plaintiffs:

1. On behalf of Licensed Firearms Dealers USA Liberty Arms, Rocky Mountain Shooter Supply, 2nd Amendment Gunsmith & Shooter Supply, LLC, Burrud Arms Inc. d/b/a Jensen Arms, Green Mountain Guns, Jerry's Outdoor Sports, Specialty Sports & Supply, and Goods for the Woods:

   Marc F. Colin
   Jonathon M. Watson
   Bruno, Colin & Lowe, P.C.
   1999 Broadway, Suite 3100
   Denver, CO 80202-5731
   Phone: (303) 831-1099

2. On behalf of Magpul Industries and the National Shooting Sports Foundation:

   Douglas L. Abbott

1

Holland & Hart, LLP
PO Box 8749
Denver, CO 80201-8749
Phone: (303) 295-8566

3. On behalf of David Bayne, Dylan Harrell, Outdoor Buddies, Inc., the Colorado Outfitters Association, Colorado Farm Bureau, Women for Concealed Carry, and Colorado Youth Outdoors:

Richard A. Westfall
Peter J. Krumholz
Hale Westfall, LLP
1600 Stout St. Suite 500
Denver, CO 80202
Phone: (720) 904-6022

4. On behalf of Colorado State Shooting Association and Hamilton Family Enterprises, Inc., d/b/a Family Shooting Center at Cherry Creek State Park:

Anthony J. Fabian
Law Offices of Anthony J. Fabian PC
510 Wilcox St., Suite C
Castle Rock, CO 80104
Phone: (303) 663-9339

5. On behalf of David Strumillo, John B. Cooke, Ken Putnam, James Faull, Larry Kuntz, Fred Jobe, Donald Krueger, Stan Hilkey, Dave Strong, Peter Gonzalez, Sue Kurtz, and Douglas N. Darr:

David B. Kopel
Independence Institute
727 E. 16th Ave.
Denver, CO 80203
Phone: (303) 279-6536

The following counsel appeared on behalf of Defendant John W. Hickenlooper:

Matthew D. Grove
Kathleen Spalding
Stephanie Scoville
LeeAnn Morrill

Office of the Colorado Attorney General
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
Phone: (720) 508-6000

## 2. JURISDICTION

**Plaintiffs' statement**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and 42 U.S.C. § 1983 because the claims arise under the Constitution and statutes of the United States.

**Defendant's Statement:**

Defendant denies that this Court has jurisdiction over Counts I, II, and III of the Fourth Amended Complaint because none of the Plaintiffs have suffered, nor are they at risk of suffering, a concrete and particularized injury to their Second Amendment rights due to the implementation of HB 1224.

Defendant also denies that the following Plaintiffs have standing to pursue any claims in the Fourth Amended Complaint: David Bayne, USA Liberty Arms; Rocky Mountain Shooters Supply; 2nd Amendment Gunsmith & Shooter Supply, LLC; Burrud Arms Inc. d/b/a/ Jensen Arms; Green Mountain Guns; Jerry's Outdoor Sports; Specialty Sports & Supply; Goods for the Woods; and Magpul.

## 3. CLAIMS AND DEFENSES

### A.    Plaintiffs' Claims

**Claim 1:** *C.R.S. § 18-12-302 (HB 1224) – Prohibition of the Possession, Sale, or Transfer of Magazines Violates the Second and Fourteenth Amendments of the United States Constitution.*

1.      This claim is brought by all Plaintiffs.

2. **Elements to be proved:**

   a. Plaintiffs have the burden to establish that Section 18-12-302 burdens conduct falling within the scope of the Second Amendment's guarantee.

Plaintiffs' Evidence:

This burden is met by the following: (1) magazines, are now, and historically have been, integral to the operation of firearms (Testimony of Michael Shain, Massad Ayoob, Elisa Dahlberg, and David Bayne and stipulations 10, 12, 14, 15, 19, and 20); (2) Section 18-12-302 restricts firearms and magazines that are commonly possessed by law-abiding citizens for lawful purposes (Testimony of Timothy Brough, John Burrud, Dylan Harrell, David Bayne, Elisa Dahlberg, Michael Shain, Shane Heap, Terry Maketa, John Cooke, Justin Smith, Lou Vallario, Jim Crone, Doug Hamilton, David Gill, and Ronald Abrams and stipulations 1, 2, 3, 6, 8, 10, 12, 14, 15, 17, 19-23, 25, 26, 38-40, and Exhibits 1, 2, 3, 4, 5, 6, 16-35, 45-46).

Defendant's Evidence:

Defendant agrees that Plaintiffs bear the burden of establishing that the challenged legislation burdens conduct falling within the scope of the Second Amendment's guarantee, but does not agree with Plaintiffs' formulation of the required test. Plaintiffs bear the burden of establishing that a large-capacity magazine is an "arm" within the meaning of the Second Amendment, and that the magazine sizes restricted by the challenged legislation are in "common use." Whether a magazine is an "arm" is a legal question.

Defendant will demonstrate that Plaintiffs cannot meet their burden of showing that large-capacity magazines are in "common use"—that is, that large numbers of

rounds are commonly necessary for self-defense (testimony from Plaintiffs' witnesses, Daniel Montgomery, Lorne Kramer, Jennifer Longdon, Jeffery Zax, Douglas Fuchs, John Cerar, John Cook, Andrew Logan, and Cheryl Ann Wilson; and via FRE 1006 exhibits, and the factual stipulations).

### Plaintiffs' Statement

> b.   Defendant must establish a close fit between the magazine ban and the actual public interest it serves, if any, and also that the state's interests are strong enough to justify the substantial encumbrance on individual Second Amendment rights.

### Defendant's Statement

> b.   Plaintiff bears the burden of establishing that the magazine capacity limitation imposes a substantial burden on their Second Amendment rights. In the absence of a substantial burden, Plaintiffs must show that the statute is irrational or arbitrary and that it cannot conceivably further a legitimate government interest. If Plaintiffs are able to establish a substantial burden, Defendant must show that the magazine capacity limitation is substantially related to its important goal of protecting public safety.

<u>Defendant's Evidence:</u>

The Defendant's evidence will show that Plaintiffs cannot establish that the challenged limitation on magazine capacity imposes any burden, much a less substantial one, on the individual right to self-defense (testimony from Plaintiffs' witnesses, Daniel Montgomery, Lorne Kramer, Jennifer Longdon, Jeffery Zax, Douglas Fuchs, John Cerar, Andrew Logan, Cheryl Ann Wilson, Michael Jones, Ernest Moore; FRE 1006 exhibits; stipulations).

Defendant will present evidence establishing a substantial relationship between the limitation on magazine capacity and the state's important goal of protecting public

safety (testimony from Daniel Montgomery, Lorne Kramer, Jennifer Longdon, Jeffery Zax, Douglas Fuchs, John Cerar, Andrew Logan, Cheryl Ann Wilson, Daniel Oates, Ernest Moore, Roger Salzgeber, Patricia Maisch; FRE 1006 exhibits).

<u>Plaintiffs' Evidence:</u>

Plaintiffs will present evidence that any state interest proffered by the Defendant in the legislative history of HB 1224 is not sufficient to justify Section 18-12-302's substantial encumbrance on individual Second Amendment rights. (Excerpts from the legislative history and testimony from Ronald Abrams). Plaintiffs will further present evidence that the Defendant cannot establish a close fit between the magazine ban and the public interest it purportedly serves. (Excerpts from the legislative history and testimony from Dr. Gary Kleck, Massad Ayoob, Kevin Davis, and Michael Shain, exhibits associated with these witnesses, and via FRE 1006 exhibits and stipulations.).

**Claim 2**[1]: *C.R.S. § 18-12-302 (HB 1224) – Grandfather Clause Permitting Possession of Magazines With a Capacity Greater than 15 Rounds Only if the Magazine was (1) Owned as of July 1, 2013; and (2) the Individual has Maintained "Continuous Possession" of the Magazine Violates the Second and Fourteenth Amendments of the United States Constitution.*

1. This claim is brought by the following Plaintiffs: Colorado Outfitters Association; Colorado Farm Bureau; National Shooting Sports Foundation; Colorado Youth Outdoors; Outdoor Buddies, Inc.; Women

---

[1] Plaintiffs recognize that the Fourth Amended Complaint lists the substantive Second Amendment claim and Fourteenth Amendment vagueness claim against Section 18-12-302's grandfather clause together as claim 3. *See* Fourth Amended Complaint, [Doc. 116], p. 45. For clarity and because they are two legally distinct claims, they are listed separately here, as Claim 2 and Claim 3.

for Concealed Carry; Colorado State Shooting Association; Hamilton Family Enterprises; David Strumillo; David Bayne; Dylan Harrell; John B. Cooke; Ken Putnam; James Faull; Larry Kuntz; Fred Jobe; Donald Krueger; Stan Hilkey; Dave Stong; Peter Gonzalez; and Douglas N. Darr.

2.  **Elements to be proved:**

    a.  Plaintiffs have the burden to establish that Section 18-12-302 burdens conduct falling within the scope of the Second Amendment's guarantee.

Plaintiffs' Evidence:

Plaintiffs will present evidence regarding the integral nature of the magazine to firearms and commonality of magazines as outlined in Claim 1. Also, this element will be established through evidence that Section 18-12-302 restricts the ability of a lawful owner to loan magazines to other law-abiding citizens for lawful purposes (Testimony of Justin Smith, Terry Maketa, John Cooke, Lou Vallario, Shane Heap, Jim Crone, Ronald Abrams, Doug Hamilton, Dylan Harrell, David Bayne, David Gill, and Elisa Dahlberg).

Defendant's Evidence:

Defendant will establish that Plaintiffs have not met their burden of showing that the "continuous possession" requirement burdens conduct falling within the scope of the Second Amendment's guarantee. Defendant will demonstrate that the "continuous possession" requirement does not prevent any Plaintiff from possessing a fully functional semi-automatic firearm, much less impose a substantial burden, on the individual right to self-defense (testimony from Plaintiffs' witnesses, Daniel Montgomery, Lorne Kramer, Jennifer Longdon, Jeffery Zax, Douglas Fuchs, John Cerar, Andrew Logan, and Cheryl Ann Wilson). Defendant will present legal argument establishing that the Second

Amendment does not guarantee the right to loan large-capacity magazines to other persons.

### Plaintiffs' Statement

      b.  Defendant must establish a close fit between the magazine ban and the actual public interest it serves, if any, and also that the state's interests are strong enough to justify the substantial encumbrance on individual Second Amendment rights.

### Defendant's Statement

      b.  Plaintiff bears the burden of establishing that the "continuous possession" of the magazine capacity limitation imposes a substantial burden on their Second Amendment rights. In the absence of a substantial burden, Plaintiffs must show that the statute is irrational or arbitrary and that it cannot conceivably further a legitimate government interest. If Plaintiffs are able to establish a substantial burden, Defendant must show that the magazine capacity limitation is substantially related to its important goal of protecting public safety.

Defendant's Evidence:

The Defendant's evidence will show that Plaintiffs cannot establish that the "continuous possession" requirement imposes any burden, much a less substantial one, on the individual right to self-defense (testimony from Plaintiffs' witnesses, Daniel Montgomery, Lorne Kramer, Jennifer Longdon, Jeffery Zax, Douglas Fuchs, John Cerar, Andrew Logan, Cheryl Ann Wilson, Michael Jones, Ernest Moore; FRE 1006 exhibits; stipulations).

Defendant will present evidence establishing a substantial relationship between the "continuous possession" requirement and the state's important goal of protecting public safety (testimony from Daniel Montgomery, Lorne Kramer, Jennifer Longdon,

Jeffery Zax, Douglas Fuchs, John Cerar, Andrew Logan, Cheryl Ann Wilson, Daniel

Oates, Ernest Moore, Roger Salzgeber, Patricia Maisch; FRE 1006 exhibits).

<u>Plaintiffs' Evidence:</u>

Plaintiffs will present evidence that any state interest proffered by the Defendant

in the legislative history of HB 1224 is not sufficient to justify Section 18-12-302's

substantial encumbrance on individual Second Amendment rights. (Excerpts from the

legislative history and testimony from Ronald Abrams, and from the evidence in part a.

of this claim). Plaintiffs will further present evidence that the Defendant cannot establish

a close fit between the magazine ban and the public interest it purportedly serves.

(Excerpts from the legislative history and testimony from Dr. Gary Kleck, Massad

Ayoob, Kevin Davis, and Michael Shain, their associated exhibits, and FRE 1006

exhibits).

**Claim 3:** *C.R.S. § 18-12-302 (HB 1224) – Grandfather Clause Permitting Possession of Magazines With a Capacity Greater than 15 Rounds Only if the Magazines were (1) Owned as of July 1, 2013; and (2) the Individual has Maintained "Continuous Possession" of the Magazine is Unconstitutionally Vague Under the Fourteenth Amendment of the United States Constitution.*

1.  This claim is brought by the following Plaintiffs: Colorado Outfitters
    Association; Colorado Farm Bureau; National Shooting Sports Foundation;
    Colorado Youth Outdoors; Outdoor Buddies, Inc.; Women for Concealed
    Carry; Colorado State Shooting Association; Hamilton Family Enterprises;
    David Strumillo; David Bayne; Dylan Harrell; John B. Cooke; Ken Putnam;
    James Faull; Larry Kuntz; Fred Jobe; Donald Krueger; Stan Hilkey; Dave
    Stong; Peter Gonzalez; and Douglas N. Darr.

2.  Plaintiffs have the burden of proof by a preponderance of the evidence.

3. **Elements to be proved:**

    a. <u>Whether a facial vagueness challenge is appropriate under these circumstances.</u>

Plaintiffs' Evidence:

Plaintiffs will present evidence that Section 18-12-302 threatens to chill constitutionally protected conduct by preventing law-abiding citizens from loaning, storing, and transferring possession of their firearms and magazines for maintenance and repair, as well as for other lawful purposes. (Testimony from Michael Shain, Timothy Brough, John Burrud, Doug Hamilton, Ronald Abrams, Terry Maketa, Justin Smith, John Cooke, Lou Vallario, Shayne Heap, Jim Crone, Elisa Dahlberg, Dylan Harrell, David Bayne, and David Gill, and Exhibits 4 and 6-8). Further, a facial vagueness challenge is appropriate under these circumstances because Plaintiffs seek declaratory judgment on a pre-enforcement review. (Fourth Amended Complaint, [Doc. 116]).

Defendant's Evidence:

Defendant will present argument that a facial vagueness challenge is inappropriate in this case because Plaintiffs' claim of "chilling" is based on an unreasonable interpretation of the challenged legislation.

    b. <u>The Court must next consider the strictness of the vagueness test required and the degree of vagueness the Constitution tolerates.</u>

Plaintiffs' Evidence:

Plaintiffs will present evidence that a high degree of specificity is required because (1) Section 18-12-302 is a criminal statute; (2) Section 18-12-302 contains no scienter requirement; (3) Section 18-12-3022 is not a regulatory statute governing business activities; and (4) Section 18-12-302 threatens to inhibit constitutionally

protected conduct. (Testimony from Michael Shain, Ronald Abrams, Terry Maketa, Justin Smith, John Cooke, Jim Crone, Lou Vallario, and Shayne Heap, and Exhibits 4 and 6-8).

Defendant's Evidence:

Defendant will present argument concerning the appropriate interpretation of the challenged statute under Colorado law, and that Plaintiffs have not met their burden of demonstrating that a "high degree of specificity is required."

c. Whether Section 18-12-302 provides fair notice.

Plaintiffs' Evidence:

Plaintiffs will present evidence that Section 18-12-302 does not define the criminal offense with sufficient definiteness such that ordinary people can understand what conduct is prohibited (Testimony from Michael Shain, Timothy Brough, John Burrud, Doug Hamilton, Ronald Abrams, Terry Maketa, Justin Smith, John Cooke, Shayne Heap, Lou Vallario, Jim Crone, Elisa Dahlberg, Dylan Harrell, David Bayne, and David Gill, James Spoden, Ronald Sloan, and Exhibits 4 and 6-8).

Defendant's Evidence:

Defendant will present evidence and argument concerning the appropriate interpretation of the "continuous possession" requirement, including the Governor's signing statement for HB 1224 and first and second Technical Guidance letters issued in response to that signing statement.

d. Adequacy of Section 18-12-302's enforcement standards

Plaintiffs will establish that Section 18-12-302 does not include adequate enforcement standards and authorizes and encourages arbitrary and discriminatory enforcement that allows policeman, prosecutors, and juries to pursue their personal predilections (Testimony from Michael Shain, Timothy Brough, John Burrud, John Cooke, Terry Maketa, Doug Hamilton, Ronald Abrams, John Cooke, Terry Maketa, Justin Smith, Shayne Heap, Lou Vallario, Jim Crone, David Gill, James Spoden, Ronald Sloan, and exhibits 4 and 6-8).

Defendant's Evidence:

Defendant will present evidence and argument concerning the appropriate interpretation of the "continuous possession" requirement, including the Governor's signing statement for HB 1224 and first and second Technical Guidance letters issued in response to that signing statement.

**Claim 4:** *C.R.S. §§ 18-12-112 and 18-12-302 (HB 1224 & 1229) Violate the Americans with Disabilities Act.*

1. This claim is brought by the following Plaintiffs: David Bayne; Dylan Harrell; Outdoor Buddies; and the Colorado State Shooting Association, on behalf of its disabled members.

2. Plaintiffs have the burden of proof by a preponderance of the evidence.

3. **Elements to be proved:**

   a. Plaintiffs are qualified individuals with a disability.

Plaintiffs' Evidence:

Plaintiffs will present evidence that Dylan Harrell and David Bayne have sustained spinal cord injuries, as a result of which they are confined to wheelchairs

12

(Testimony of Dylan Harrell and David Bayne). Plaintiffs will also testify that they are members of Outdoor Buddies, and that there are many other members of Outdoor Buddies who have similar disabilities. (Testimony of Dylan Harrell and David Bayne).

<u>Defendant's Evidence:</u>

Defendant will present evidence that neither of Dylan Harrell nor David Bayne is a "qualified individual with a disability" because they have made no claim that they have attempted to receive services or participate in public programs or activities provided by a public entity but been denied from the receipt of those services or participation in the public activity by virtue of their disability (testimony of Dylan Harrell and David Bayne).

<blockquote>

b. <u>Plaintiffs' Second Amendment right to self-defense, including self-defense in the home, are disparately impacted by HB 1224 and HB 1229.</u>

</blockquote>

<u>Plaintiffs' Evidence:</u>

Plaintiffs will present evidence that the ban on magazines of greater than 15 rounds impairs their ability to defend themselves because their disabilities make it appreciably more difficult to change magazines in self-defense situations, and they lack the mobility necessary to retreat to positions of safety where such magazine changes can be done. (Testimony of David Bayne, Dylan Harrell, and Massad Ayoob). Plaintiffs will also present evidence that their disabilities result in their having to temporarily transfer firearms, and that HB 1229's restrictions on private transfers disparately interfere with their exercise of Second Amendment rights. (Testimony of David Bayne, Dylan Harrell, and Massad Ayoob).

<u>Defendant's Evidence:</u>

Defendant will present evidence that limitations on magazine capacity have no adverse impact on Mr. Bayne's and Mr. Harrell's ability to engage in self-defense (testimony of David Bayne, Dylan Harrell, and Massad Ayoob). Defendant will present evidence that universal background check requirements have no disparate impact on either Mr. Bayne or Mr. Harrell.

        c.      <u>The discriminatory effect of HB 1224 and HB 1229 stems from Plaintiffs' disabilities.</u>

<u>Plaintiffs' Evidence:</u>

Plaintiffs will present evidence that the sole reason for the disparate impact described in connection with the second element is their status as qualifying disabled individuals. (Testimony of Dylan Harrell, David Bayne, and Massad Ayoob; Exhibit 183).

<u>Defendant's Evidence:</u>

Plaintiffs will present evidence that the challenged statute has no disparate impact on either Mr. Bayne or Mr. Harrell (testimony of Dylan Harrell and David Bayne).


**Claim 5:** *C.R.S. § 18-12-112 (HB 1229) – Restrictions on Firearm Sales and Temporary Transfers Violate the Second and Fourteenth Amendments of the United States Constitution.*

    1.     This claim is brought by the following Plaintiffs: Colorado Outfitters Association; Colorado Farm Bureau; National Shooting Sports Foundation; Magpul Industries; Colorado Youth Outdoors; USA Liberty Arms; Outdoor Buddies, Inc.; Women For Concealed Carry; Colorado State Shooting Association; Hamilton Family Enterprises, Inc., D/B/A Family Shooting Center at Cherry Creek State Park; David Strumillo;

David Bayne; Dylan Harrell; Rocky Mountain Shooters Supply; 2nd Amendment Gunsmith & Shooter Supply, LLC; Burrud Arms Inc. D/B/A Jensen Arms; Green Mountain Guns; Jerry's Outdoor Sports; Specialty Sports & Supply; and Goods For The Woods.

2. **Elements to be proved:**

   a. <u>Plaintiffs have the burden to establish that Section 18-12-112 burdens conduct falling within the scope of the Second Amendment's guarantee.</u>

<u>Plaintiffs' Evidence:</u>

This burden is shown by the following: (1) evidence that Section 18-12-112 severely restricts the temporary transfer of all firearms (Testimony from Bob Hewson, Elisa Dahlberg, Timothy Brough, John Burrud, J. Paul Brown, Terry Maketa, Shayne Heap, Jim Crone, John Cooke, Justin Smith, Lou Vallario, Ronald Abrams, and Michelle Eichler, and Exhibits 3, 9, and 37-40); (2) evidence that Section 18-12-112 has caused many federal licensed firearms dealers to refuse to conduct background checks, which results in law-abiding citizens being unable to privately sell, purchase, or temporarily transfer firearms (Testimony from Bob Hewson, Elisa Dahlberg, Timothy Brough, John Burrud, J. Paul Brown, Michelle Eichler, Nick Colglazier, James Spoden, Terry Maketa, Shayne Heap, Jim Crone, John Cooke, Justin Smith, Lou Vallario, Ronald Abrams, and Ron Sloan, and Exhibits 5, 10-14, 41, 141-42).

<u>Defendant's Evidence:</u>

Defendant will present evidence and argument that private firearms sales do not fall within the scope of the Second Amendment, and that § 18-12-112 has not prevented any Plaintiff from acquiring or possessing a firearm for any lawful purpose (testimony

from Plaintiffs, James Spoden, Andy Logan, Lorne Kramer, Daniel Montgomery, and

Ron Sloan).

**Plaintiffs' Statement**

       b.  Defendant must establish a close fit between the required background checks and the actual public interest it serves, if any, and also that the state's interests are strong enough to justify the substantial encumbrance on individual Second Amendment rights.

**Defendant's Statement**

       b.  Plaintiff bears the burden of establishing that requiring background checks for private firearms transfer imposes substantial burden on their Second Amendment rights. In the absence of a substantial burden, Plaintiffs must show that the statute is irrational or arbitrary and that it cannot conceivably further a legitimate government interest. If Plaintiffs are able to establish a substantial burden, Defendant must show that the private background check requirement is substantially related to its important goal of protecting public safety.

Defendant's Evidence:

    Defendant will present evidence that the expansion of background check requirements is substantially related to the state's goal of protective public safety, because requiring background checks for private sales will make it more difficult for prohibited persons to acquire firearms, reduce firearms trafficking and illegal diversion, and reduce firearms homicide rates (testimony of Daniel Webster, James Spoden, Ronald Sloan, Daniel Oates, Daniel Montgomery, Lorne Kramer, Ernest Moore).

Plaintiffs' Evidence:

    Plaintiffs will present evidence that any state interest proffered by the Defendant in the legislative history of HB 1229 is not sufficient to justify Section 18-12-112's substantial encumbrance on individual Second Amendment rights. (Excerpts from the

16

legislative history). Moreover, background checks in the format required by Section 18-12-112 and during the course of private sales and temporary transfers do not serve any public benefit. Further, Plaintiffs will present evidence that Defendant has not established a close fit between the particular requirements of Section 18-12-112 and the public interest it is supposed to serve. (Testimony from Bob Hewson, Elisa Dahlberg, Timothy Brough, John Burrud, J. Paul Brown, Michelle Eichler, Nick Colglazier, James Spoden, and Ron Sloan, and Exhibits 6, 10-14, 37-41, 141-42).

**B.      Defendant's Affirmative Defenses**

Defendant raises the following affirmative defenses with respect to the claim raised under the Americans with Disabilities Act:

1.      The statutes are justified by a legitimate, non-discriminatory purpose (legislative history);

2.      The statute is not a program, service, or activity and therefore falls outside the scope of Title II of the ADA;

3.      Plaintiffs are not qualified individuals with a disability (testimony of David Bayne and Dylan Harrell);

4.      The requested modification would fundamentally alter the nature of the law (legal argument);

5.      The modification of the law plaintiffs propose is unreasonable and would fundamentally change the nature of the law (legal argument).

## 4. STIPULATIONS

1.      Firearms have been lawfully and privately owned in the United States since before the adoption of the Second Amendment to the United States Constitution, and at all times since.

2.      Most firearm owners own more than one firearm.  The full extent of private ownership is unknown, but half or more of all households claim that they do not own a firearm.

3.      Since 2004, manufacturing of all types of handguns and rifles in the United States for sale to the non-military market has increased annually from approximately 2.35 million in 2004 to 5.49 million in 2011. In 2011, 224,000 rifles and handguns were exported, and 2.72 million were imported. Source: Bureau of Alcohol Tobacco, Firearms & Explosives, *Firearms Commerce in the United States, Annual Statistical Update 2013*, Exhibits 1-3.

4.      The total number of handguns, rifles or shotguns in Colorado or the United States is not known.

5.      There are hundreds of different firearm manufacturers, but the majority of firearms are produced by several dozen American and foreign manufacturers. There are thousands of different models of firearms, and often numerous variations of a given model. For example, the Ruger SR9 is a model of 9mm semi-automatic pistol that has at least four variants: 3301, 3309, 3312, 3321. The specifications on all four are the same, except the 3301 comes with a 17 round magazine in a brushed stainless finish; the 3309 comes with a 10 round magazine in a brushed stainless finish; the 3312 comes with a 10

round magazine in a black nitride finish; the 3321 comes with a 17 round magazine in a black nitride finish.

6.      Handguns predominantly include semi-automatic pistols and revolvers. No currently-manufactured revolvers hold more than 15 rounds. There are also other less popular styles of handguns, such as derringers, and other handguns with a one or two shot capacity. In its data reporting, the ATF classifies these guns as "other" and excludes them from "pistols" and "revolvers," and none currently manufactured has a capacity greater than 15 rounds.

7.      Long guns are rifles or shotguns. Some shotguns are single shot and some are double-barreled. Neither has an ammunition capacity of greater than 15. Some shotguns are pump action, lever action, bolt action, or semi-automatic.  Most shotguns have one or two fixed magazine tubes each of 28 inches or less, and are not affected by HB 1224.  A few shotgun models have magazine tubes longer than 28 inches and a few others models use detachable box magazines which can store more than 8 rounds of ammunition. These latter two types of shotguns are subject to the restrictions in HB 1224.

8.      Rifles may be single shot, bolt action, lever action, pump action, or semi-automatic. There are numerous models of semi-automatic rifles, including those based on the popular AR-15 platform.

9.      Bolt action rifles do not use magazine tubes that hold more than 15 rounds. Some bolt action rifles use detachable box magazines of various sizes, but most hold less than 10 rounds. As with any detachable box magazine, such magazines may be of any size. Lever action rifles typically use tube magazines. Lever action rifles with tube

magazines are exempt from HB 1224. Additionally, rifles with tube magazines that can hold more than 15 rounds and that use .22 rimfire ammunition are exempt under HB 1224

10.     More than 300,000,000 firearms are lawfully owned in the United States. A significant percentage of firearms privately owned are semi-automatic, most of which utilize a detachable box magazine. Although the total number is not known, the number of lawfully owned semi-automatic firearms that utilize a detachable box magazine with a capacity greater than 15 rounds is in the tens of millions.

11.     After July 1, 2013, thousands of models and variants of firearms with detachable box magazines remain available for lawful purchase and use for home defense in Colorado. With very few exceptions, every gun that was available before July 1, 2013, is compatible with magazines holding 15 or fewer rounds. Similarly, after July 1, 2013 many models and variants of magazines designed to hold 15 or fewer rounds remain available for lawful purchase and use for home defense in Colorado.

12.     Several million AR-15 platform rifles have been lawfully purchased in the United States and are used for lawful purposes. In 2011, AR-15 platform rifles accounted for approximately 18% of all rifles made in the United States for the domestic market. Many of these are used by law enforcement officers in the line of duty and many are used by private citizens. There are a large number of other models of semi-automatic rifles, including from companies such as Ruger and Marlin, which use detachable box magazines and which have been lawfully purchased and used in the United States and Colorado.  An unknown number of AR-15 platform and other semi-automatic rifles have been transferred or obtained unlawfully or used for unlawful purposes.

13.     The number of AR-15 platform or other semi-automatic rifles in Colorado is not known. The number of AR-15 platform or other semi-automatic rifles in Colorado equipped with magazines of more than 15 rounds is not known, but is less than the total.

14.     All AR-15 platform rifles are semi-automatic and all utilize a detachable box magazine.

15.     In states without laws regulating magazine capacity, AR-15 platform rifles are usually sold at retail with a detachable box magazine capable of holding up to 30 rounds. In states without laws regulating magazine capacity, the majority of owners of AR-15 platform rifles use magazines with a capacity of 20 and/or 30 rounds.

16.     All AR-15 platform rifles are capable of accepting and functioning properly with magazines of 15 or fewer rounds.

17.     In 2011, the most recent year for which data is available, more than 2.5 million pistols were manufactured nationally; more than 500,000 revolvers were manufactured nationally.

18.     HB 1224 does not prevent a manufacturer from shipping to Colorado a semi-automatic rifle or pistol without any magazine, or with a magazine that complies with HB 1224.

19.     Semi-automatic firearms equipped with detachable box magazines with a capacity greater than 15 rounds are used for multiple lawful purposes, including recreational target shooting, competition shooting, collecting, hunting, and are kept for home defense and defense outside the home.

20.     Semi-automatic pistols and rifles cannot function as designed without a magazine. Semi-automatic firearms are designed to discharge a bullet for each pull of the

trigger, automatically extract and eject the spent cartridge case from the firing chamber, re-cock the firing mechanism, and load a new cartridge into the firing chamber so it can be fired again with another pull of the trigger.

21.     Detachable magazines can be purchased independently of firearms, including for use with semi-automatic rifles and semi-automatic pistols. The most widely utilized firearm magazine is a detachable box magazine. Detachable box magazines come in a wide variety of capacities.

22.     Many full-sized 9mm semi-automatic pistols are sold at retail with magazines with capacities of greater than 15, for example the Glock 17, which is one of the most popular handguns sold in the United States. The Glock 17 is often used by law enforcement personnel. Nine millimeter handguns come with a variety of magazine sizes, including 15 or fewer rounds. Compacts and sub-compact handguns are sold at retail with magazines of 15 or fewer rounds.

23.     Most semi-automatic pistols in calibers of .40 or larger are not sold at retail with magazines capable of holding more than 15 rounds. Some owners of such handguns use extenders which add 1, 2, or 3 rounds of capacity.

24.     No semi-automatic pistols in calibers of .45 are sold at retail with magazines capable of holding more than 15 rounds.

25.     Although the total number of magazines of any size in the United States is not known, the number of large capacity magazines is in the tens of millions. There are also tens of millions of magazines in sizes of 15 rounds or less.

26.     Although the total number of magazines of any size in Colorado is not known, the number of large capacity magazines is in the millions. There are also millions of magazines in sizes of 15 rounds or less.

27.     With some exceptions, manufacturers of semi-automatic pistols that have standard magazines that hold more than 15 rounds also manufacture magazines with a capacity of 15 rounds or less. Aftermarket manufacturers also make and sell magazines with a capacity of 15 rounds or less. In the current market, for semi-automatic pistols and rifles for which the standard magazine is greater than 15 rounds and for which a substitute magazine is available, the substitute magazine's capacity is often 10 rounds. Fifteen round magazines also are commercially available for AR-15 platform rifles and some pistols.

28.     Magazines with a capacity of 15 or fewer rounds are manufactured in the United States and are available for purchase in Colorado.

29.     Many law enforcement agencies, including the Colorado State Patrol and the Federal Bureau of Investigation, issue handguns as duty weapons that have magazines containing 15 or fewer rounds. Some officers in these agencies are authorized to carry semi-automatic rifles with large capacity magazines in addition to the sidearm issued by their employers.

30.     Firearm magazines can become non-operational due to normal wear and tear or other damage. The lifespan of any firearm magazine cannot be known and varies based on materials, design, maintenance and use, as well as several other factors. As with any mechanical device, magazines can become non-functional over time. Depending upon use and maintenance, magazines may operate properly for decades or more.

31.     Components such as limiters that can decrease the capacity of magazines are manufactured and are available for purchase in the United States.

32.     There are magazines manufactured to accommodate no more than fifteen rounds of ammunition that can be converted to accept additional ammunition.

33.     Base and floor plates (on box magazines) and end caps (on tube magazines) may be either removable or permanently affixed. However, most magazines contain removable base and floor plates or end caps.

34.     Removable base and floor plates and end caps allow for cleaning and maintenance and repair.

35.     A removable base or floor plate or end cap alone does not increase a magazine's capacity.

36.     Magazines with removable base or floor plates or end caps may accept additional components, such as extensions, that increase capacity.

37.     Components that can increase the capacity of magazines are manufactured in the United States.

38.     After July 1, 2013, the following models of Magazines manufactured by Magpul may not be sold to individuals in Colorado: MAG557 – 30 rounds; MAG556 – 30 rounds; MAG570 – 30 rounds; MAG571 – 30 rounds; MAG560 – 20 rounds; MAG555 – 30 rounds; MAG291 – 20 rounds; MAG234 – 30 rounds; MAG241 – 30 rounds; MAG292 – 25 rounds.

39.     Magpul has lost the revenue associated with the inability to sell the model magazines listed in No. 38 above to customers in Colorado after July 1, 2013.

40.     Because Magpul principally sells to distributors, it does not know the precise number of magazines that it manufactures that are sold in Colorado and therefore cannot know the actual amount of lost sales revenue. Magpul also sells through direct Internet sales, and sold at least 500,000 magazines to Colorado residents in 2013 before the effective date of HB 1224. Sales in Colorado in 2013 were inflated by increased demand to purchase Magpul magazines prior to the effective date of HB 1224.

41.     Magpul has more than $100 million in total sales annually. Magpul had more than $7.5 million in sales of magazines to Colorado alone in 2013. Magpul had a Colorado "spend" of $46 million in 2012 and expected to have a Colorado spend of $85 million during 2013.

42.     Between 20% and 50% of Magpul total magazine sales are to government entities (International, Federal, and State) depending on numerous variables, such as troop deployments. For example, in 2010, Magpul entered a 4-year contract with the British Army to deliver 1,000,000 thirty-round magazines.

43.     In 2013, Magpul sold more magazines in Colorado than in any prior year.

44.     Colorado law enforcement officers and agencies may acquire and possess the Magpul magazines listed in No. 1 above. Pursuant to HB 1224, any Colorado FFL or distributor may still purchase the Magpul model magazines listed in No. 38 above to sell the magazines out of state or in any other manner permitted by law.

45.     In December 2012, Magpul announced new magazines with a 10-cartridge capacity -- the MAG559 and MAG290. The magazines began shipping in April 2013.

Both models are sold direct to individuals in Colorado. Both models are manufactured with the same materials and are tested to be just as functional and reliable as Magpul magazines of higher capacity. The MAG559 and MAG290 are marketed by Magpul as being "Perfect for hunting applications, depending on local hunting laws, and also for states where overall capacity is limited."

46. Magpul manufactures nearly 500 products for sale worldwide.

47. Magpul manufactures and sells dozens of products for AR styled semi-automatic firearms unaffected by HB1224, including stocks, slings, grips and sights.

48. Magpul manufactures magazine accessories – many designed to facilitate changing magazines of any size – including magazine couplers, magazine loops and speed plates.

49. Magpul manufactures and sells magazine limiters in all states in 5 and 10 round configurations.

50. To date, Magpul has not chosen to manufacture a 15 round magazine.

51. Magpul does not manufacture a product to extend any of its magazines to hold a larger capacity. Magpul does not manufacture a product designed to extend the capacity of any semi-automatic magazine made by any manufacturer.

52. All of Magpul's magazines feature a removable baseplate. This design feature allows for ease of access to the magazine's internal parts for cleaning and maintenance.

53. Magpul designs and manufactures high-quality magazines, many of which meet or exceed military grade standards.

54.     Magpul has not modified its standard magazines in order to sell them into states that have enacted magazine capacity restrictions.

55.     Magpul does not design its magazines or magazine components to function with other companies' accessories.

56.     Magpul gave away thousands of magazines in Colorado in June 2013. Certain promotional magazines were manufactured with different imprinted logos, including "Boulder Airlift", "Free Colorado" and "1999 2013."

57.     Since at least 2007, Magpul has manufactured all its magazines with a manufacturing date stamp.

58.     Magpul is currently operating in Colorado. As reported in multiple outlets, Magpul plans to relocate operations outside of Colorado.

59.     Between March 1 and June 30, 2013, Magpul gave Colorado residents priority in ordering magazines with 20- or 30-round capacity.

60.     Magpul describes firearm magazines in its literature as follows: "We ask a lot from this little box, without which our firearms become far less useful. This 'simple' feeding device can easily be taken for granted…until it doesn't work."

61.     Since July 1, 2013, Magpul has and will continue to sell or donate magazines to law enforcement agencies located in Colorado as well as law enforcement agencies in other states.

62.     Richard Fitzpatrick, Doug Smith, Libardo Jimenez, Jessica Johnson, and Tara Heller are all current employees of Magpul.

## 5. PENDING MOTIONS

There are currently a total of six FRE 702 motions pending before this court, relating to some or all of the expert opinions of Kevin Davis, Michael Shain, Massad Ayoob, Gary Kleck, John Cerar, and Douglas Fuchs.

In addition, the parties request leave from the Court to file trial briefs prior to the March 31, 2014, trial on the merits. Trial briefs will frame and present argument on the legal issues surrounding the appropriate legal standards to be applied to the Second Amendment claims, the Fourteenth Amendment vagueness claim, the claim raised under the Americans with Disabilities Act, and other issues that may require resolution. Determination of the applicable legal standards is highly important to the resolution of this matter, and the parties recognize that the Proposed Final Pretrial Order is not the appropriate venue for such argument.

## 6. WITNESSES

A single joint list of all witnesses is appended hereto as *Addendum A*.

## 7. EXHIBITS

a. A single joint Exhibit List is appended hereto as *Addendum B*.

b. Copies of listed exhibits must be provided to opposing counsel and any *pro se* party no later than 30 days before trial. The objections contemplated by Fed. R. Civ. P. 26(a)(3) shall be filed with the clerk and served by hand delivery or facsimile no later than 14 days after the exhibits are provided.

## 8. DISCOVERY

Discovery has been completed, with the exception of a few agreed upon depositions that will be taken prior to trial.

## 9. SPECIAL ISSUES

This case involves Second and Fourteenth Amendment challenges to Colorado's gun legislation. In many ways, the law surrounding Second Amendment and Fourteenth Amendment vagueness challenges is unsettled. As noted above in Section 5, the determination of the legal standards applied to Plaintiffs' claims is essential to the resolution of this matter. Consequently, the parties propose that they file trial briefs prior to the March 31, 2014, trial on the merits containing argument on the appropriate law and legal standards to be applied.

**Defendant's Statement:**

i.      The parties disagree as to the continued viability of Claim 2 in the Fourth Amended Complaint (Doc. 116) in the wake of the Court's order on the Governor's motion to dismiss. (*See* Doc. 96, fn. 3). Defendant anticipates seeking the Court's permission to file a motion *in limine* concerning this claim, related opinions proffered by Plaintiffs' expert Michael Shain, and Plaintiffs' identification of previously undisclosed Exhibits 16-34, 45-46 and related testimony.

ii.      Defendant anticipates offering testimony from Aurora Police Chief Daniel Oates concerning the mass shooting that took place in Aurora, Colorado, on July 20, 2012, and testimony from Reading, Connecticut Police Chief Douglas Fuchs concerning the mass shooting that occurred in Newtown, Connecticut, on December 14,

2012. The prosecution in the Aurora shooting is seeking the death penalty against defendant James Holmes, and the judge in that case has issued a gag order to limit pretrial publicity. While Chief Oates' testimony is not prohibited by that gag order, any testimony about the Aurora shooting will be widely reported, and therefore has the potential to adversely impact the pending criminal trial. For those portions of Chief Oates' testimony that touch on the events of July 20, 2012, Defendant respectfully requests closure of the courtroom.

Defendant may request a similar remedy for the portion of Chief Fuchs' testimony that relates to the Newtown shooting. While there is no pending criminal trial as a result of that shooting, publicity associated with testimony describing the events could potentially result in the disclosure of information that has been heretofore kept confidential by Connecticut authorities.

## 10.  SETTLEMENT

Because this case involves facial challenges to the constitutionality of a state law, settlement is not a possibility.

## 11.  OFFER OF JUDGMENT

Counsel and any *pro se* party acknowledge familiarity with the provision of Rule 68 (Offer of Judgment) of the Federal Rules of Civil Procedure. Counsel have discussed it with the clients against whom claims are made in this case.

## 12. EFFECT OF FINAL PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this action and the trial, and may not be amended except by consent of the parties and approval by the court or by order of the court to prevent manifest injustice. The pleadings will be deemed merged herein. This Final Pretrial Order supersedes the Scheduling Order. In the event of ambiguity in any provision of this Final Pretrial Order, reference may be made to the record of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

## 13. TRIAL AND ESTIMATED TRIAL TIME; FURTHER TRIAL PREPARATION PROCEEDINGS

a.      Trial of the claims is to the Court.

b.      Estimated trial time is 10 days – 30 hours per side, time to be kept by the Court.

c.      Trial is to be held before the Honorable United States District Court Judge Marcia S. Krieger, United States District Court, District of Colorado.

d.      Any other orders pertinent to the trial proceedings: None.


DATED this _____day of _____, 20_____.


BY THE COURT:


_____
Marcia S. Krieger
United States District Judge


APPROVED: