IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-1866-GPG-SKC

BENJAMIN GATES, *et al*.

    Plaintiffs,

v.

JARED S. POLIS, Governor of the State of Colorado,

    Defendant.

---

**NON-PARTY BERETTA U.S.A. CORP.'S OPPOSED MOTION TO AMEND PROTECTIVE ORDER**

---

Non-Party Beretta U.S.A Corp. ("Beretta"), by and through its undersigned counsel, moves under Fed. Rule. Civ. P. 26(c) to amend the Protective Order to add a "Confidential – Attorneys' Eyes Only" ("AEO") confidentiality designation to protect the disclosure of Beretta's trade secret information being sought by Defendant's Subpoena to Produce. Pursuant to the Court's Practice Standards, D.C.COLO.LCivR 7.1(a), and Fed. Rule Civ. P. 26(c), counsel for Beretta has met and conferred with counsel for Plaintiffs Benjamin Gates, et al. ("Plaintiffs") and Defendant Jared S. Polis ("Defendant") regarding the relief requested in this motion. Plaintiffs *do not oppose* the proposed modifications to the Protective Order. Counsel for Defendant and counsel for Beretta met and conferred on multiple occasions via telephone and email, but were unable to reach agreement. Accordingly, Defendant *opposes* the proposed modification to the Protective Order.

    **I.    INTRODUCTION**

This case challenges the constitutionality of certain provisions of C.R.S. § 18-12-301 *et*

1

*seq.*, referred to as the "Magazine Ban," which generally makes it a crime to sell, transfer, or possess in the State a magazine capable of holding more than 15 rounds, i.e., a "large-capacity magazine." Beretta traces its origin to 1526 and is a firearms manufacturing company that manufactures and sells a variety of firearms for civilian, law enforcement, and military purposes, including suppling the primary side arm of the United States Army, Marine Corps, Navy, and Air Force from 1985 until 2019. Defendant served a Subpoena to Produce ("Subpoena") on Beretta, requesting, amongst other things, Beretta's sales data as it relates to sales of large-capacity magazines in the United States. Beretta considers its national sales data to be trade secret information.

The Protective Order dated April 6, 2023 includes a single tier of confidentiality and allows information to be designated "Confidential." (*See* Dkt. 48, at ¶ 3.) Information designated "Confidential" under the Protective Order may be disclosed widely, including to the parties, expert witnesses and consultants without providing any opportunity to object, deponents, witnesses, and potential witnesses. (*Id.*, at ¶ 4(a)-(h).) The Protective Order also does not require any notice to a non-party prior to the use of its Confidential information in public filings, which undermines the ability of a non-party to protect its Confidential information by participating in the requirements of D.C.COLO.LCivR 7.2. (*Id.*, at ¶ 10.) Furthermore, the Protective Order does not address how Confidential information will be treated at trial, further undermining the ability of a non-party to protect its Confidential information. Accordingly, the Protective Order does not provide adequate protection for trade secret information, the disclosure of which should be limited. The modifications to the Protective Order requested herein are narrowly tailored to protect Beretta's trade secret sales data.

## II.    FACTUAL BACKGROUND

The Subpoena to Beretta was originally dated March 20, 2023 and served on March 22, 2023, but was substantive amended on March 30, 2023. The Subpoena included fifteen (15) requests for documents, all generally seeking information regarding Beretta's firearms and magazines capable of holding 16 rounds or more. (Declaration of Ryan J. Fletcher ("Fletcher Decl."), Ex. 1, at pp. 3-5.) Beretta timely served its objections and responses on April 11, 2023. Much of the information sought by the Subpoena is publicly available on Beretta's website (e.g., magazine capacities of each make and model of firearm sold by Beretta). Thus, Beretta's responses included links to is website where certain requested information could be found. Additionally, with its objections and responses, Beretta produced a declaration from Jeffrey K. Reh, General Counsel and Corporate Secretary for Beretta. The declaration included, between July 28, 2021 and March 31, 2023, the number of magazines sold by Beretta in Colorado and in how many transactions, and of those magazines sold, the number of magazines sold by Beretta in Colorado capable of holding more than 15 rounds and in how many transactions. This information in the Reh declaration was designated Confidential pursuant to the Protective Order.

To the extent the requests in the Subpoena sought Beretta's national sales data (e.g., number of magazines sold and number of transactions in the United States between 7/28/2021 and 3/31/2023, number of high capacity magazines sold and number of transactions in the United States between 7/28/2021 and 3/31/2023), Beretta objected to producing this information to the extent it requests highly confidential and trade secret information without an adequate Protective Order. Beretta has the information responsive to the Subpoena and is willing to produce it if the Protective Order is modified to include a "Confidential – Attorneys' Eyes Only" tier of confidentiality in order to adequately protect the disclosure of Beretta's highly

3

confidential and trade secret information relating to national sales.

### III.     LEGAL STANDARD

      a.  **Modification To A Protective Order.**

Under Federal Rule of Civil Procedure 26(c), upon a showing of "good cause" a court may issue a protective order to forbid the disclosure of discovery to the public, prevent inquiry into certain matters, or limit the scope of disclosure or discovery to certain matters. *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008); *see also* Fed. R. Civ. P. 26(c)(1)(A), 26(c)(1)(D). The "good cause" standard of Rule 26(c) is "highly flexible, having been designed to accommodate all relevant interests as they arise." *Landco Equity Partners, LLC v. City of Colorado Springs*, 259 F.R.D. 510, 512 (D. Colo. 2009) (quoting *Rohrbough*, 549 F.3d at 1321).

"The modification of a protective order, like its original entry, is left to the sound discretion of the district court." *Rohrbough*, 549 F.3d at 1321. "Protective orders are not permanent or immutable and may be modified to serve important efficiency or fairness goals." *U.S. ex rel. Pogue v. Diabetes Treatment Centers of America*, No. Civ.99-3298, 01-MS-50(MDL)(RCL), 2004 WL 2009414 at *2 (D.D.C. May 14, 2004). Indeed, a party may move to amend a protective order for good cause, and the party—or non-party in this case—seeking to modify a protective order "bears the burden of showing that good cause exists to justify the desired change." *United States v. Anthem, Inc.*, No. 1:16-cv-1493 (ABJ), 2016 WL 11164026, at *2 (D.D.C., Sept. 15, 2016). "To show good cause, the party seeking to modify the protective order must provide specific facts showing the particular harm that is likely to occur in the absence of such an order and that this harm outweighs the opposing side's interests in preparing for trial." *Id.*, at *2. Good cause exists when a non-party's highly confidential and trade secret information is at issue. *See Cabell v. Zorro Prod., Inc.*, 294 F.R.D. 604, 610 (W.D. Wash. 2013)

(finding good cause existed for protective order allowing non-parties to designate highly confidential or commercially-sensitive information subject to production under a subpoena as "attorneys' eyes only".)

### b. Trade Secret Protection Extends to Sales Data.

The Colorado Uniform Trade Secrets Act defines a trade secret as follows:

> "Trade secret" means the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value. To be a "trade secret" the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes.

C.R.S.A. § 7-74-102(4). [1]

Courts recognize that sales data can be a trade secret when it is not readily ascertainable from a public source. *See France Telecom S.A. v. Marvell Semiconductor Inc.*, No. 12-cv-04967-WHO, 2014 WL 4965995, at *4 (N.D. Cal. Oc. 3, 2014) (finding non-public sales information was "among the types of competitively sensitive information that qualifies as a trade secret"); *see also Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112, 1117-18 (Fed. Cir. 1996) (affirming that sales data was a protectable trade secret); *Yeiser Research & Dev LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1046 (S.D. Cal. 2017) ("[C]ourts recognize that sales data may constitute a trade secret if it is not readily ascertainable from a public source but instead developed with a

---

[1] Similarly, under the federal Defend Trade Secrets Act, "trade secret" is defined as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

substantial amount of time, effort, and money."); *Uhlig LLC v. Shirley*, No. 6:08-cv-01208-JMC, 2012 WL 2923242, at *6 (D.S.C. July 17, 2012) (finding historical sales information to be trade secret information); *RKI, Inc. v. Grimes*, 177 F. Supp. 2d 859, 874 (N.D. Ill. 2001) (finding "historical sales information" warranted trade secret protection).

Indeed, due to its highly confidential and trade secret nature, sales data is often designated as "attorneys' eyes only" under protective orders entered by courts in this district. *See Snyder v. Beam Tech.*, No. 20-cv-03255-NYW, 2022 WL 17741903, at *4 (D. Colo. Dec. 6, 2022) (restricting access of an exhibit which included historical sales data because such information was not public and the disclosure of which could threaten the company and its competitive standing in the market); *All Plastic, Inc. v. SamDan LLC*, No. 20-cv-01318-NYW, 2021 U.S. Dist. LEXIS 133242, at *6 (D. Colo. Feb. 15, 2021) (finding that it was appropriate for competitive information including sales information to be designated as Confidential-AEO); *A Major Difference, Inc. v. Wellspring Prods., LLC*, 243 F.R.D. 415, 417-18 (D. Colo. 2006) (finding that a two-tier protective order with an "attorney's eyes only" designation was appropriate to protect sales information).

## IV. ARGUMENT

### a. Beretta's National Sales Data Is Trade Secret Information.

While Beretta was willing to disclose its Colorado sales data—which makes up only a small subset of its sales data—with a designation of Confidential, Beretta considers the larger compilation of its national sales data to be trade secret. (Declaration of Jeffrey K. Reh ("Reh Decl.") at ¶¶ 3-7.) It is the entirety of Beretta's national sales data, rather than smaller subsets of sales data, which derives value from not being generally known. (*Id.*) Information regarding Beretta's national sales data requires resources to develop and maintain, and such data is not readily ascertainable from a public source. (*Id.*, at ¶¶ 3-5.) Indeed, Beretta takes reasonable

measures to keep this information secret. (*Id.*, at ¶ 5.) Thus, Beretta's national sales data is trade secret information. *See Roton Barrier*, 79 F.3d at 1117-18; *Yeiser Research*, 281 F. Supp. 3d at 1046; *France Telecom*, 2014 WL 4965995, at *4; *RKI, Inc.*, 177 F. Supp. 2d at 874; *see also* 18 U.S.C. § 1839(3); C.R.S.A. § 7-74-102(4).

      **b. There Is Good Cause To Add An "Attorney's Eyes Only" Designation To The Protective Order To Limit Disclosure Of Trade Secrets.**

Courts commonly find it appropriate and necessary to designate non-public sales information as "attorney's eyes only" under a protective order to restrict its disclosure. *See, e.g.*, *Snyder*, 2022 WL 17741903, at *4. The current Protective Order has only a single tier of confidentiality and is therefore inadequate to protect the disclosure of Beretta's trade secret sales information. Specifically, information designated "Confidential" under the Protective Order may be disclosed to, for example, the parties, expert witnesses and consultants without an opportunity to object, deponents, witnesses, and potential witnesses. (Dkt. 48, at ¶ 4(a)-(h).) Moreover, there is no limit to the disclosure of "Confidential" information at trial, nor any requirement to notify a non-party prior to the use of its Confidential information in public filings, which undermines the ability of a non-party to protect its Confidential information by participating in the requirements of D.C.COLO.LCivR 7.2.

If Beretta were to designate its trade secret national sales data as "Confidential," Beretta would be potentially harmed by the wide disclosure of its trade secrets to those listed in paragraphs 4(b)-(c), and (f) of the Protective Order because such disclosures would jeopardize the secrecy and economic value of its trade secrets. (Reh Decl. at ¶¶ 3, 6.) This harm outweighs any potential harm the parties' may face in their abilities to prepare for trial if information is permitted to be disclosed on an "AEO" basis under limited circumstances. For example, counsel for Defendant could still share aggregated national sales data—data from all subpoenaed parties

aggregated together to remove non-party identifying information—with the Governor and its staff, and the parties could still share Beretta's national sales data with their experts after disclosing their experts to Beretta's counsel and giving Beretta an opportunity to object, if necessary. Because of the harm Beretta would face if its trade secret sales information were to be widely disclosed to those permitted to access "Confidential" information under the Protective Order, there is good cause to modify the Protective Order to include a "Confidential – Attorneys' Eyes Only" designation. Indeed, "[t]he disclosure of confidential information on an 'attorneys' eyes only' basis is a routine feature of civil litigation involving trade secrets." *See Paycom Payroll, LLC v. Richison*, 758 F.3d 1198, 1202 (10th Cir. 2014).

"Good cause implies changed circumstances or new situations." *United States v. Anthem*, 2016 WL 11164026, at *2. The circumstances have changed here because as a non-party, Beretta was not involved in the preparation of the Protective Order in this case. However, as Beretta's trade secret information is now being sought in this case, a new situation has arisen that presents good cause to modify the Protective Order.

        **c. The Proposed Modifications Are Narrowly Tailored To Protect Highly Confidential And Trade Secret Information.**

As discussed above, Beretta's proposed modifications to the Protective Order include the addition of a "Confidential – Attorneys' Eyes Only" tier of confidentiality. (Fletcher Decl., Ex. 2, at ¶¶ 6, 7.) The proposed modifications to the Protective Order directed to "AEO" information, including the limitations on disclosure of "AEO" information, are narrowly tailored to protect Beretta's trade secrets. (*Id*., at ¶ 7.) For example, the disclosure of "AEO" information to expert witnesses and consultants should be limited to ***outside*** expert witnesses and consultants (i.e., not existing employees or affiliates of a party), and precautions should be taken prior to the disclosure of "AEO" information, such as giving the producing party an opportunity to object to

8

the disclosure of "AEO" information to the *outside* expert witness or consultant. (*Id*., at ¶ 7(b).) Additionally, the disclosure of "AEO" information to deponents, witnesses, or potential witnesses, should only be permitted if he or she is an author, signatory, or prior recipient of the "AEO" information. (*Id*., at ¶ 7(f).) Furthermore, the disclosure of Beretta's "AEO" information in a public filing should require notice be given to Beretta so that it can participate in the requirements of D.C.COLO.LCivR 7.2. (*Id*., at ¶ 13.)

To the extent the parties determine there is a need to disclose "AEO" information at trial, Beretta proposes modifying the Protective Order to include a procedure for limiting the courtroom to only those persons listed in paragraph 7(a)-(f) and subsequently sealing any portions of the trial transcript that contain "AEO" information." (*Id*., at ¶ 7(f).) These modifications to the Protective Order are appropriate to protect Beretta's sensitive historical sales information, which qualifies as a trade secret. *See France Telecom*, 2014 WL 4965995, at *4 (restricting access to non-public sales information at trial). Such precautions and limitations on the disclosure of "AEO" information will enable "AEO" information to be used and disclosed on a limited basis in the case, while also minimizing the risk of inadvertent disclosure of Beretta's trade secrets.

## V.   CONCLUSION

Beretta respectfully requests that the Court grant its motion and enter the First Amended Protective Order, filed concurrently herewith as Exhibit 3 to the Declaration of Ryan J. Fletcher.

DATED:  May 31, 2023

        MERCHANT & GOULD, P.C.
By: */s/ Ryan J. Fletcher*
Ryan J. Fletcher, Ph.D.
RFletcher@merchantgould.com
**MERCHANT & GOULD P.C.**
1801 California St., Suite 3300
Denver, CO 80202
Telephone: (303) 357-1651
Facsimile: (612) 332-9081

*Attorney for Beretta U.S.A. Corp.*

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a true and accurate copy of **NON-PARTY BERETTA U.S.A. CORP.'S OPPOSED MOTION TO AMEND PROTECTIVE ORDER** was served via electronic mail on May 31, 2023.

Barry K. Arrington
Arrington Law Firm
3801 East Florida Avenue, Suite 830
Denver, Colorado 80210
Voice: (303) 205-7870; Fax: (303) 463-0410
Email: barry@arringtonpc.com

Shaun Pearman
Eric Paul Apjoke
The Pearman Law Firm, P.C.
4195 Wadsworth Boulevard
Wheat Ridge Colorado 80033
Phone Number: (303) 991-7600
Fax Number: (303) 991-7601
E-mail: shaun@pearmanlawfirm.com
Eric@pearmanlawfirm.Com

*Attorneys for Plaintiffs*

LeeAnn Morrill
First Assistant Attorney General
Emily B. Buckley
Senior Assistant Attorney General
Peter G. Baumann
Assistant Attorney General
Daniel R. Magalotti
Assistant Attorney General Fellow
Colorado Attorney General's Office
1300 Broadway, 10th Floor
Denver, Colorado 80203
Telephone: 720-508-6450
Email: leeann.morrill@coag.gov
emily.buckley@coag.gov
peter.baumann@coag.gov
daniel.magalotti@coag.gov

*Attorneys for Defendant*
*Jared S. Polis, Governor of the State of Colorado*

    */s/Ryan J. Fletcher*