IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-1866-GPG-SKC

BENJAMIN GATES, *et al*.

    Plaintiffs,

v.

JARED S. POLIS, Governor of the State of Colorado,

    Defendant.

---

**DECLARATION OF JEFFREY K. REH IN SUPPORT OF
NON-PARTY BERETTA U.S.A. CORP.'S MOTION TO AMEND PROTECTIVE ORDER**

---

    I, Jeffrey K. Reh, state the following, of which I have personal knowledge:

    1.    I am the General Counsel and Corporate Secretary for Beretta U.S.A. Corp. located at 17601 Beretta Drive, Accokeek, Maryland 20607. I have been General Counsel for Beretta U.S.A. ("Beretta") since 1986. I am familiar with Beretta's business records and Beretta's policies on developing and maintaining its business records.

    2.    Beretta develops and maintains records related to its sales of firearms in the ordinary course of business. Beretta's business records include sales data regarding the number and type of magazines sold and the number of sales transactions. Beretta's sales data includes national sales data, as well as sales data by state.

    3.    Beretta has expended significant resources to develop and maintain its national sales data, including its national sales data regarding the number and type of magazines sold and the number of sales transactions, i.e., the information requested by Defendant's subpoena to Beretta in this case. Beretta considers this information highly confidential business and financial



1

information, which has value to Beretta's competitive positioning in the marketplace. For example, customers make purchasing decisions based on the popularity, or lack thereof, of firearms and their components, including magazines. In addition, competitors in the firearm and firearm component industry drive sales by pointing to the popularity, or lack thereof, of certain firearms and firearm components like magazines. If Beretta's national sales data became public, competitors would almost certainly use this information to their competitive advantage, and Beretta's detriment, through marketing and advertising. For example, on one hand, a smaller firearm manufacturer may point to Beretta's national sales information and differentiate itself by appealing to customer desire for bespoke manufacturers. On the other hand, a large firearm manufacturer may point to Beretta's national sales information and differentiate itself by appealing to customer desire for the most sold, and therefore allegedly most dependable, firearm components. These are just two examples of the myriads of ways competitors can, and would, use Beretta's national sales data to their commercial benefit.

   4. Beretta's national sales data is not readily ascertainable from a public source. Beretta considers its national sales data, including that national sales data regarding the number and type of magazines sold and the number of sales transactions to be trade secret.

   5. Beretta diligently protects its confidential trade secret information, including its national sales data, and carefully monitors who has access to proprietary information, such as national sales data. For example, Beretta:

    a. Limits access to all such information to only employees who need to know it in order to perform their job duties;

    b. Requires individualized usernames and passwords to access Beretta's computers and networks;

    c. Requires employees to sign a nondisclosure agreement that contains a covenant against disclosure of confidential information or trade secrets;

    d. Requires all employees to receive and acknowledge receipt of the employee handbook, which contain policies related to the protection of confidential information, including trade secrets;

    e. Collects, upon termination of employment, all company property, including all keys, building keycards, company computers and cell phones, and the employee handbook or, to the extent an employee is allowed to keep his or her company laptop and/or cell phone, they may do so only after company-confidential information has been erased from the device; and

    f. Removes, upon termination of employment, access to all company-related logins.

6. Beretta would be harmed by the disclosure of its national sales data because such disclosures would jeopardize the secrecy and economic value of its trade secrets. For example, disclosure of Beretta's national sales data would harm Beretta by:

    a. Potentially undermining customer perception of Beretta; and

    b. Providing competitors tangible information to develop marketing campaign and sale points.

7. On April 21, 2023, Beretta disclosed its relevant Colorado sales data in response to the Subpoena it received from Defendant in this case. Because Beretta's Colorado sales data makes up only a nominal subset of Beretta's overall national sales data, Beretta disclosed this information with a designation of Confidential pursuant to the Protective Order. The accidental or inadvertent disclosure of Beretta's Colorado sales data, while unfortunate, would not rise to the level of harm and competitive disadvantage that the accidental or inadvertent disclosure of its



national sales data.

I hereby declare under penalty that the foregoing is true and correct.

DATED: May 30, 2023

                                        RESPECTFULLY SUBMITTED

                                        /s/ _____

                                        Jeffrey K. Reh

4