IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-CV-1866-GPG-SKC

BENJAMIN GATES,
TRAVIS SWARTZ,
KARL HONEGGER, and
NATIONAL FOUNDATION FOR GUN RIGHTS, INC.

     Plaintiffs,

v.

JARED S. POLIS, in his official capacity as Governor of the State of Colorado,

     Defendant.

**DEFENDANT'S OPPOSITION TO NON-PARTY BERETTA U.S.A. CORP.'S OPPOSED MOTION TO AMEND PROTECTIVE ORDER**

This suit concerns the constitutionality of Colorado's large capacity magazine ("LCM") restriction, which makes magazines of 16 rounds or more illegal in most circumstances. C.R.S. §§ 18-12-301, 302 ("LCM Ban"). The Second Amendment protects those "weapons in common use today for self-defense." *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2134 (2022) (internal quotation marks omitted); *see also District of Columbia v. Heller*, 554 U.S. 570, 624 (2008) (noting that the Second Amendment protects those firearms that are "in common use at the time" (internal quotation marks omitted)). To determine whether LCMs are "in common use today," Defendant Governor Jared S. Polis, in his official capacity, issued subpoenas to eleven different firearms manufacturers, firearms retailers, and magazine manufacturers

(collectively, "Firearms Corporations").[1]  Relevant here, Defendant required Firearms Corporations to produce sales data concerning the sale of magazines of 15 rounds or fewer and magazines of 16 rounds or more to reflect the division between legal and illegal magazines under Colorado's statute.  Defendant requested this sales data on a nationwide basis, as the sale of magazines subject to the LCM Ban has been illegal in Colorado in most circumstances since July 1, 2013.

To address concerns raised about the confidentiality of the nationwide sales data, Defendant moved this Court to put into place a protective order for the benefit of all the subpoenaed Firearms Corporations.  Unopposed Motion for Protective Order [# 44].  In response, this Court put into place the Protective Order [# 48].  As noted in Defendant's motion, the current Protective Order is consistent with Section F.5 of the Court's civil practice standards and mirrors the protective order approved by the Court in *Gillard v. Boulder Valley School District RE-2*, 196 F.R.D. 382 (D. Colo. 2000).

Of the eleven Firearms Corporations subpoenaed by Defendant, ten have produced national sales data on firearm magazines either under the current Protective Order or before any protective order was in place.

The only Firearms Corporation that has refused to do so is Beretta U.S.A. Corp. ("Beretta"), who now moves this Court for an amended protective order.  *See* Non-Party Beretta U.S.A. Corp's Opposed Motion to Amend Protective Order [# 50] ("Beretta's Motion").

---

[1] As noted in Defendant's Response to Plaintiffs' Motion for Preliminary Injunction, Defendant maintains that LCMs are not "arms" and thus do not receive Second Amendment protection. [# 30 at 11–12]; *see also Ocean State Tactical, LLC v. Rhode Island*, No. 22-CV-246-JJM-PAS, 2022 WL 17721175, at *11–13 (D.R.I. Dec. 14, 2022) (concluding that magazines of more than ten rounds are not arms under the Second Amendment in a challenge to Rhode Island's statute).

Defendant issued a subpoena to Beretta on March 22, 2023, and sent a revised version of the subpoena on March 30, 2023. After extensive conferral over multiple phone calls and emails, on April 21, 2023, Beretta produced a declaration highlighting the number of magazines of 15 rounds or fewer and 16 rounds or more sold in *Colorado* between July 29, 2021 and March 31, 2023. But, as noted above, Defendant requested sales data on *nationwide* basis. Colorado sales data is not pertinent to the commonality question under *Bruen* because: (1) the Second Amendment applies in the United States as a whole, not just in Colorado; and (2) for the time period for which Defendant requested sales data, the sale of magazines of 16 rounds or more has been prohibited in Colorado, with limited exceptions.

Beretta now argues that the current Protective Order is insufficient to protect nationwide sales numbers and seeks to designate such data as "Attorney's Eyes Only" ("AEO"). Defendant opposes Beretta's Motion, for two reasons.

## ARGUMENT

**I.    Other cases in which courts have designated sales information as Attorneys' Eyes Only are not analogous.**

First, designating nationwide sales data as AEO is unnecessary. Defendant generally agrees with Beretta that nationwide sales data can be considered confidential information. *See* Beretta's Motion [#50 at 5–6]. It was for this reason that Defendant asked the Court to enter the current Protective Order. But the current Protective Order is more than sufficient to protect confidential data produced by any of the Firearms Corporations. Beretta highlights three cases in which sales data was given an AEO designation. Beretta's Motion [#50 at 6]. Each of these cases is distinguishable.

In *Snyder v. Beam Technologies, Inc.*, No. 20-cv-03255-NYW, 2022 WL 17741903 (D. Colo. Dec. 6, 2022), the sales data at issue concerned the company's "historic sales data and over 4,000 other business[es'] premium accounts." *Id.* at *4. Beam noted that "[n]one of this financial information—Beam's or its clients'—is publicly available and disclosure would threaten Beam and its clients' competitive standing as a seller and as buyers, respectively, in the insurance market." Unopposed Motion to Restrict, *Snyder v. Beam Technologies, Inc.*, No. 20-cv-3255-NYW [# 104 at 5]. But here, unlike in *Beam*, Beretta is not providing sales data for any clients or other businesses. Defendant has made clear to Beretta that he does not require any identifying information for any of Beretta's clients or purchasers. And the document in *Beam* included "109 pages of Beam's individual sales figures and corresponding clients from 2018 through 2019." *Id.* at 2. Again, Defendant does not request matching Beretta's sales numbers with any individual clients.

Beretta's willingness to produce Colorado sales data under the current Protective Order highlights the differences between *Snyder* and this case. In Beretta's April 21, 2023, production listing the number of magazines sold in Colorado, Beretta simply listed the total number sold for each category of magazine. Such numbers, when produced on a nationwide scale as required by the subpoena, are unlike the detailed sales information at issue in *Snyder*, where Beam sought to restrict information that "display[ed] all of Beam's accounts . . . through 2019." *Id.* at 4. Beretta's willingness to disclose some of its sales information, *i.e.*, the Colorado sales data, is proof that the nationwide information is not so sensitive as to require an AEO designation. And while Beretta argues that its "national sales data is trade secret information," Beretta's Motion [#50 at 7], none of the cases cited by Beretta turned on whether the sales information pertained to

4

the national market or regional markets. *See Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112, 1118 (Fed. Cir. 1996); *Yeiser Research & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1046 (S.D. Cal. 2017); *RKI, Inc. v. Grimes*, 177 F. Supp. 2d 859, 874 (N.D. Ill. 2001); *France Telecom S.A. . Marvell Semiconductor, Inc.*, No. 12-cv-04967-WHO, 2014 WL 4965995, at *4 (N.D. Cal. Oct. 3, 2014). The two statutes cited by Beretta that contain definitions for "trade secret" also make no explicit distinction between national and regional sales data. *See* 18 U.S.C. § 1839(3); C.R.S. § 7-74-102(4).

In *All Plastic, Inc. v. SamDan LLC*, No. 20-cv-01318-NYW, 2021 WL 2979005 (D. Colo. Feb. 15, 2021), this Court designated certain documents as AEO "given the undisputed competitive nature of the relationship between the Parties, and the significant amount of distrust that ha[d] been reflected in [that] action." *Id.* at *5. The Court pointed to "communications with . . . customers" as a reason for the AEO designation. *Id.* So "financial information (such as sales data) associated with Defendants' products accused of infringement" was "of competitive interest, particularly given the ongoing competition between the Parties." *Id.* The same was true in *A Major Difference, Inc. v. Wellspring Products, LLC*, 243 F.R.D. 415 (D. Colo. 2006): "There [wa]s no dispute that plaintiff [A Major Difference] and Wellspring [we]re competitors in the business of selling 'ion' footbaths," and the case involved A Major Difference suing Wellspring for trademark infringement. *Id.* at 417. So "[t]he issue [wa]s whether the corporate representative of one company may review proprietary and confidential financial information of a direct competitor or whether the disclosure of confidential and proprietary information should be restricted to the attorneys for each party and to any outside experts." *Id.* The Court agreed

with an AEO designation to prevent "disclosure to any representative of a direct competitor." *Id.* at 417–18.

Unlike in *All Plastics* and *A Major Difference*, Beretta is not a party, and the parties in this case are not firearms manufacturers and do not compete with Beretta in any manner. Moreover, Beretta asserts no reason why the parties in this case are likely to reveal Beretta's confidential information publicly in a way that would disclose it to a competitor. In fact, the current Protective Order expressly prohibits such disclosure, and any violation would be punishable by sanctions and/or contempt. [# 48, ¶ 4] ("CONFIDENTIAL documents, materials, and/or information . . . shall not, without the consent of the designating party or further Order of the Court, be disclosed except that such information may be disclosed to" the attorneys, parties, expert witnesses, court employees, witnesses, and other individuals required by law.). The current Protective Order is sufficient in light of the lack of the adversarial relationship that was present in *All Plastic* and *A Major Difference*.[2]

## II. Restricting the information to attorneys in the case impedes Defendant's ability to formulate litigation strategy.

The proposed amendments to the Protective Order would also interfere with Defendant's ability to advise on litigation strategy. Representatives of the Governor's office, including issue-matter experts, are routinely involved with counsel in making strategic decisions and evaluating

---

[2] In *Snyder*, the dispute was between a former employee and his former employer. *Snyder v. Beam Technologies, Inc.*, No. 20-cv-03255-NYW, 2021 WL 4947295, at *1 (D. Colo. Aug. 16, 2021). At issue were spreadsheets containing "detailed and valuable market information about health insurance brokers throughout the United States." *Id.* "[A]fter Mr. Snyder's termination, Beam continued to use the Spreadsheets to generate sales throughout the United States and continued to profit from its use of the Spreadsheets." *Id.* at *3. The suit concerned a former employee claiming that his former employer was appropriating trade secrets. *Id.* That is not the case here.

available evidence. And the question of commonality under *Bruen* and *Heller* is a key threshold inquiry that shapes the rest of Defendant's strategy in this litigation. While Beretta asserts that it would be acceptable for "counsel for Defendant" to "share aggregated national sales data," [#50 at 7], sharing such aggregated data is insufficient for Defendant and his representatives. The breakdown of how many firearm magazines in each category sold by each company is necessary for Defendant to view before Defendant can decide how to proceed on the commonality question at all stages of the litigation, including discovery, summary judgment, and any eventual trial.

Similarly, the restrictions on sharing the nationwide sales data with expert witnesses, as proposed by Beretta, is unduly burdensome on Defendant. Defendant has retained experts in the fields of statistical analysis and the operation of firearms. These experts have not only provided expert reports for use in this case, but Defendant also regularly consults with these experts for other issues that arise, such as understanding how firearms operate, the types of magazines firearms use, the availability of magazines of different sizes for particular firearms, analysis of statistical data, and analysis of statistical methodology. The onerous steps outlined in Beretta's proposed order for the confidential information that is designated AEO, *see* [#50, Ex. 3, ¶ 7(b)], hampers Defendant and his counsel's ability to freely and regularly consult with retained experts in this case.

## CONCLUSION

Ultimately, the current Protective Order, which is the standard protective order issued by this Court, provides sufficient protection for Beretta's nationwide sales data. That order allows third parties, like Beretta, to mark information as "confidential." [# 48, ¶ 3]. Confidential information "shall not be disclosed or used for any purpose except the preparation and trial of

this case." *Id.* And that confidential information "shall not, without the consent of the designating party," *i.e.*, Beretta, "or further Order of the Court, be disclosed" except to the limited number of individuals designated in paragraph four of the Protective Order, all of whom have a connection to the case, and none of whom are representatives of any of Beretta's competitors. *Id.*, ¶ 4.

Therefore, Defendant respectfully requests that this Court deny Non-Party Beretta U.S.A. Corp.'s Opposed Motion to Amend Protective Order.

DATED: June 14, 2023.

PHILIP J. WEISER
Attorney General

*s/ Daniel R. Magalotti*
LEEANN MORRILL*
First Assistant Attorney General
EMILY B. BUCKLEY*
Senior Assistant Attorney General
PETER G. BAUMANN*
Assistant Attorney General
DANIEL R. MAGALOTTI*
Assistant Attorney General Carr Fellow
Colorado Attorney General's Office
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: (720) 508-6000
Email: leeann.morrill@coag.gov
         emily.buckley@coag.gov
         peter.baumann@coag.gov
         daniel.magalotti@coag.gov
*Attorneys for Defendant Governor*
  *Jared S. Polis*
*Counsel of Record

## CERTIFICATE OF SERVICE

      I hereby certify that on June 14, 2023, I served a true and complete copy of the foregoing **DEFENDANT'S OPPOSITION TO BERETTA U.S.A. CORP.'S MOTION TO AMEND PROTECTIVE ORDER,** upon all parties herein by e-filing with the CM/ECF system maintained by the court and/or email, addressed as follows:

Eric Paul Apjoke
Shaun Pearman
Pearman Law Firm, P.C.
4195 Wadsworth Blvd.
Wheat Ridge, CO 80033
eric@pearmanlawfirm.com
shaun@pearmanlawfirm.com

Barry Kevin Arrington
Arrington Law Firm
3801 East Florida Ave., Suite 830
Denver, CO 80210
barry@arringtonpc.com

*Attorneys for Plaintiffs*

Ryan J. Fletcher
Merchant & Gould P.C.
1801 California Street, Suite 3300
Denver, CO 80202
rfletcher@merchantgould.com

*Attorney for Beretta U.S.A. Corp.*

                                              *s/* Daniel R. Magalotti
                                              *Daniel R. Magalotti*