IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-1866-GPG-SKC

BENJAMIN GATES, *et al*.

    Plaintiffs,

v.

JARED S. POLIS, Governor of the State of Colorado,

    Defendant.

---

**NON-PARTY BERETTA U.S.A. CORP.'S REPY IN SUPPORT OF ITS OPPOSED MOTION TO AMEND PROTECTIVE ORDER**

---

Non-party Beretta U.S.A Corp. ("Beretta") replies in support of its Motion to Amend Protective Order ("Motion") as follows:

**I.   The Current Protective Order Was Entered Without Input From Non-Party Beretta.**

This case was filed on July 28, 2022. (Dkt. 1.) The parties did not move for a Protective Order until approximately eight months later when Defendant was seeking information from third parties in subpoenas. Defendant moved for a Protective Order on March 31, 2023, just one day after the subpoena to Beretta was substantively amended. (Dkt. 44.) Defendant's Unopposed Motion for Protective Order ("Motion for Protective Order") states that "several of the third-parties have indicated that certain records responsive to the subpoenas contain confidential information, including specifically proprietary commercial information that is not in the public domain" and that "[t]he same third-parties have asked whether a protective order controlling the disclosure and use of such information has been entered in this case and represented that they will object to the production of certain documents responsive to the subpoena absent such a

1

protective order." (*Id.*, ¶¶ 2-3.)

Despite recognizing the need for a protective order based on input from subpoenaed parties, Defendant never provided the proposed Protective Order to Beretta prior to filing its Motion for Protective Order. Thus, Beretta did not have an opportunity to convey its concerns that certain records responsive to the subpoena contain Beretta's trade secrets before Defendant provided the Court with a proposed Protective Order. Indeed, Defendant's Motion for Protective Order did not contemplate that any of the records responsive to the subpoenas would contain trade secrets, so the Protective Order proposed by Defendant had only a single tier of confidentiality allowing materials to be designated "Confidential." (Dkt. 44-1, ¶ 3.) Had Defendant conferred with Beretta before filing its Motion for Protective Order, Beretta would have opposed Defendant's proposed Protective Order because it is inadequate to protect the disclosure of trade secret information. Since Beretta was not a party to discussions surrounding the current Protective Order, and now Beretta's trade secretion information is being sought, there are changed circumstances that support a showing of good cause to amend the Protective Order. *See Infineon Tech. AG V. Green Power Techs. Ltd.*, 247 F.R.D. 1, 2 (D.D.C. 2005) ("Good cause implies changed circumstances or new situations . . . .") (internal quotations omitted).

Moreover, the fact that the current Protective Order mirrors the protective order approved by the Court in *Gillard v. Boulder Valley School District RE-2*, 196 F.R.D. 382 (D. Colo. 2000), as pointed out in Defendant's Response (*see* Dkt. 52, at 2), is not persuasive because that case did not involve any trade secret information. In cases involving trade secrets, disclosure of information on an AEO basis is standard practice. *See Paycom Payroll, LLC v. Richison*, 758 F.3d 1198, 1202 (10th Cir. 2014) ("The disclosure of confidential information on

2

an 'attorneys' eyes only' basis is a routine feature of civil litigation involving trade secrets.") (internal quotations omitted); *see also AssociationVoice, Inc. v. AtHomeNet, Inc.*, No. 10-cv-00109-CMA-MEH, 2010 WL 1258062, at *3 (D. Colo. Mar. 29, 2010) (entering a protective order that varied from the example order in *Gillard* to include an "attorneys' eyes only" designation" in order to protect trade secrets and highly confidential information).

## II. Defendant's Argument That The Current Protective Order Is Sufficient Because Other Third Parties Produced Their Information Is Misplaced.

Defendant overreaches when it states that "the current Protective Order is more than sufficient to protect confidential data produced by any of the Firearms Corporations." (Dkt. 52, at 3.) Defendant bases this argument on the fact that ten of the subpoenaed Firearms Corporations have produced national sales data on firearm magazines either under the current Protective Order or before any protective order was in place, and Beretta is the only Firearms Corporation that has not produced its national sales data. (*Id.*, at 2.)

How other companies treat their national sales data and who they disclose it to is irrelevant to whether Beretta's national sales data is trade secret information that requires a higher level of confidentiality than what is available under the current Protective Order. Thus, Defendant's Response attempts to undermine Beretta's position that its national sales data is a trade secret by making statements regarding other subpoenaed third parties, which are irrelevant to the analysis of whether Beretta's information is a trade secret.

Information qualifies as trade secret when it is secret and of value, and the owner has taken measures to maintain the secrecy of the information. *See* C.R.S.A. § 7-74-102(4); *see also* 18 U.S.C. § 1839(3). The value of Beretta's national sales data, the secrecy of this information, and the efforts taken by Beretta to maintain the secrecy is detailed in the Declaration of Jeffrey K. Reh ("Reh Declaration") filed concurrently with Beretta's Motion. (*See* Dkt. 50-5, ¶¶ 3-5.)

3

The fact that other Firearms Corporations do not consider their national sales data to be trade secret, and produced this information under the current Protective Order, has no bearing on whether the current Protective Order is sufficient to protect the disclosure of Beretta's national sales data, which it takes the necessary steps to maintain as a trade secret and considers a trade secret.

Moreover, that Beretta disclosed its Colorado sales data, is not "proof that the nationwide information is not so sensitive as to require an AEO designation," as Defendant contends. (Dkt. 52, at 4.) As explained in Beretta's Motion, which is supported by the Reh Declaration, Colorado sales data makes up only a small subset of Beretta's national sales data, and it is the larger compilation of national sales data that Beretta considers trade secret information. (*See* Dkt. 50, at 6 (citing Reh Decl., ¶¶ 3-7).) Trade secret protection can extend to a collection of data even when a subset of that data is not considered to be a trade secret. *See North American Deer Registry, Inc. v. DNA Solutions, Inc.*, No. 4:17-CV-00062, 2017 WL 2402579, at *7-8 (E.D. Tex. June 2, 2017) (discussing that "[a] trade secret includes compilations of data that the owner has taken steps to keep secret and that derive independent economic value," even when small subsets of the data had been made public).

### III. Defendant's Generalized Statements Fail To Explain How Disclosing Beretta's National Sales Data On An AEO Basis Impedes Its Litigation Strategy.

Defendant argues that disclosing information on an AEO basis "impedes Defendant's ability to formulate litigation strategy." (Dkt. 52, at 6.) However, Defendant fails to articulate precisely who from Defendant and his representatives needs access to Beretta's national sales data and how it is necessary to developing their litigation strategy.

Defendant argues that the question of commonality under *Bruen* and *Heller* "is a key threshold inquiry that shapes the rest of Defendant's strategy in this litigation," and therefore,

4

"[t]he breakdown of how many firearm magazines in each category sold by each company is necessary for Defendant to view before Defendant can proceed on the commonality question . . . ." (*Id*., at 7 (citing *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022); *District of Columbia v. Heller*, 554 U.S. 570 (2008)).) But this generalized statement does not explain *why* a breakdown of how many firearm magazines in each category sold by *each* company is necessary to address the question of commonality under *Bruen* and *Heller*, or who would be analyzing the data provided. For example, Defendant provides no explanation as to why the question of commonality under *Bruen* and *Heller* cannot be addressed at each stage of litigation using aggregated national sales data with third-party identifying information removed (i.e., the compilation of national sales data from each subpoenaed third party in order to remove the association of sales data with specific third parties). Defendant has failed to adequately explain why it requires the disclosure of Beretta's trade secret national sales data more broadly than on an AEO basis.

### IV.     Beretta's Proposed Restrictions On Disclosure Of AEO Information Are Reasonable And Necessary To Protect Beretta's Trade Secrets.

Defendant argues that the restrictions on sharing nationwide sales data with expert witnesses, as proposed by Beretta, are unduly burdensome on Defendant. (Dkt. 52, at. 7.) Not so. Beretta's proposed restrictions on the disclosure of AEO information to experts are reasonable and common restrictions implemented in cases involving trade secrets and other highly confidential information. For example, protective orders frequently require the non-producing party to disclose the identity of an expert or consultant prior to the disclosure of AEO information to that expert and provide an objection period for a producing party to object to the disclosure of information to such experts or consultants. *See Biovail Corp. Int'l V. Hoechst Aktiengesellschaft*, No. Civ.A. 98-1434(MTB), 1999 WL 33454801, at *8 (D.N.J. Nov. 12,

1999) (per protective order, highly confidential information was not to be disclosed until identity of consultant or expert was disclosed and an opportunity was provided to object to the disclosure to the consultant or expert); *In re Neubauer*, 173 B.R. 505, 507-08 (D. Md.1994) (affirming protective order provision requiring disclosure of the identity of experts and consultants before they can be given confidential information and providing a 10-day period to object to disclosure to such persons); *see also Gerffert Co. v. Dean*, No. 09 CV 266(MKB), 2012 WL 2054243, at *5 (E.D.N.Y. June 6, 2012) (ordering protective order to include a provision requiring that notice be given to producing party prior to disclosing "Attorneys' Eyes Only" materials to an expert); *Wreal LLC v Amazon.Com, Inc.*, No. 14-21385-CIV, 2014 WL 7273852, at *4 (S.D. Fla. Dec. 19, 2014) (entering protective order requiring the disclosure of non-testifying consulting experts who receive "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY" documents). These are not "onerous" restrictions as Defendant alleges.

The restrictions Beretta proposed on the disclosure of AEO information are necessary to protect Beretta's trade secrets because the identity of fact and expert witnesses are unknown to Beretta. However, the witnesses may likely include individuals who would find Beretta's national sales data valuable. For example, witnesses could include employees or consultants of other gun manufacturers, i.e., Beretta's competitors.[1] Thus, although there may be no "adversarial relationship" between Beretta and the parties, as Defendant points out (Dkt. 52, at 6), there may be an adversarial relationship between Beretta and witnesses.

Moreover, the identity of party representatives and employees of the parties are unknown to Beretta, so Beretta does not know the full extent of who will have access to information

---

[1] As discussed in Beretta's Motion, Courts commonly designate trade secret information as "Attorneys' Eyes Only" under a protective order, and this is especially common when the disclosure of information is to a competitor. *See All Plastic, Inc. v. SamDan LLC*, No. 20-CV-01318-NYW, 2021 WL 2979005, at *3 (D. Colo. Feb. 15, 2021); *A Major Difference, Inc. v. Wellspring Prods., LLC*, 243 F.R.D. 415, 417-18 (D. Colo. 2006).

6

disclosed as "Confidential" under the Protective Order. Beretta has serious concerns about its trade secret national sales data getting into the hands of a party or individual that will threaten the value and secrecy of Beretta's information. For example, the National Foundation for Gun Rights Inc., a party to this case, is a party to other pending lawsuits and, if given the opportunity to access Beretta's national sales data, may inadvertently use this information for purposes outside the scope of this case. *See* https://gunrightsfoundation.org/our-lawsuits/. The restrictions Beretta proposed on the disclosure of AEO information are narrowly tailored to protect its trade secrets while still providing the requested information to necessary parties.

## V.   CONCLUSION.

Beretta respectfully requests that the Court grant its Motion and enter the First Amended Protective Order, filed concurrently with Beretta's Motion as Exhibit 3 to the Declaration of Ryan J. Fletcher.

DATED:  June 28, 2023

MERCHANT & GOULD, P.C.
By: */s/ Ryan J. Fletcher*
Ryan J. Fletcher, Ph.D.
RFletcher@merchantgould.com
**MERCHANT & GOULD P.C.**
1801 California St., Suite 3300
Denver, CO 80202
Telephone: (303) 357-1651
Facsimile: (612) 332-9081

*Attorney for Beretta U.S.A. Corp.*

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that a true and accurate copy of **NON-PARTY BERETTA U.S.A. CORP.'S REPLY IN SUPPORT OF ITS OPPOSED MOTION TO AMEND PROTECTIVE ORDER** was served via electronic mail on June 28, 2023.

Barry K. Arrington
Arrington Law Firm
3801 East Florida Avenue, Suite 830
Denver, Colorado 80210
Voice: (303) 205-7870; Fax: (303) 463-0410
Email: barry@arringtonpc.com

Shaun Pearman
Eric Paul Apjoke
The Pearman Law Firm, P.C.
4195 Wadsworth Boulevard
Wheat Ridge Colorado 80033
Phone Number: (303) 991-7600
Fax Number: (303) 991-7601
E-mail: shaun@pearmanlawfirm.com
Eric@pearmanlawfirm.Com

*Attorneys for Plaintiffs*

LeeAnn Morrill
First Assistant Attorney General
Emily B. Buckley
Senior Assistant Attorney General
Peter G. Baumann
Assistant Attorney General
Daniel R. Magalotti
Assistant Attorney General Fellow
Colorado Attorney General's Office
1300 Broadway, 10th Floor
Denver, Colorado 80203
Telephone: 720-508-6450
Email: leeann.morrill@coag.gov
emily.buckley@coag.gov
peter.baumann@coag.gov
daniel.magalotti@coag.gov

*Attorneys for Defendant*
*Jared S. Polis, Governor of the State of Colorado*

                                    */s/Ryan J. Fletcher*