IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-1866-GPG-SKC

BENJAMIN GATES,
TRAVIS SWARTZ
KARL HONEGGER, and
NATIONAL FOUNDATION FOR GUN RIGHTS, INC.

   Plaintiffs,

v.

JARED S. POLIS, in his official capacity as Governor of the State of Colorado

   Defendant.

---

**RESPONSE TO DEFENDANT'S MOTION PARTIALLY TO STRIKE MARK PASSAMANECK'S REPORT AND EXCLUDE HIS TESTIMONY**

---

Plaintiffs submit the following response to Defendant's motion partially to strike expert Mark Passamaneck's expert report and exclude his testimony.

## INTRODUCTION

C.R.S. § 18-12-302(1) (the "Magazine Ban") bans firearm magazines with a capacity in excess of 15 rounds. Whether such magazines are in common use and therefore protected by the Second Amendment[1] is the central issue in this case. The fact that there are many millions of such magazines in the United States is not controversial. Indeed, in two prior cases, *Colorado Outfitters Ass'n v. Hickenlooper* ("*Colorado Outfitters*") 24 F. Supp. 3d 1050 (D. Colo. 2014), *vacated on other grounds*

---

[1] See *D.C. v. Heller*, 554 U.S. 570, 629 (2008) (arms in common use are protected).

1

*and remanded,* 823 F.3d 537 (10th Cir. 2016), and *Rocky Mountain Gun Owners v. Polis*, 2020 CO 66, 467 P.3d 314 ("*RMGO II*"), the State stipulated to this fact. But in this case the State has not made a similar stipulation, and it has also filed a motion (ECF 29) requesting the Court to avert its gaze from its prior stipulations. Plaintiffs have retained firearms expert Mark Passamaneck to render an opinion regarding the number of magazines with a capacity greater than 15 rounds. Unsurprisingly, Mr. Passamaneck's opinion is consistent with the State's prior stipulations. The number of such magazines is in the millions. See Exhibit A. Even though Mr. Passamaneck's opinion is consistent with the State's prior stipulations regarding this uncontroversial matter, the State has moved to strike that opinion. But the motion should be denied because Mr. Passamaneck's knowledge and experience make him qualified to render the opinion, and the methods and facts he used to reach his opinion are reliable.

## LEGAL STANDARD

A proffer of expert testimony is tested against the standard of reliability, not correctness. *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008), *citing Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999). The proponent need only show that the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used, and that the methodology was otherwise reliably applied. *Id.* "[T]he rejection of expert testimony is the exception rather than the rule." *O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 922 (D. Colo.

2

2017), (quoting Fed. R. Evid. 702 advisory committee's note). "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id*. "Vigorous cross-examination and presentation of contrary evidence are the traditional and appropriate means of attacking admissible evidence." *Id.*

## ARGUMENT

### I. The Issue is Whether the Banned Magazines are In Common Use

Colorado's Magazine Ban burdens conduct covered by the text of the Second Amendment and is therefore presumptively unconstitutional. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2129-30 (2022) (Constitution presumptively protects conduct – such as bearing arms – covered by the text). The State may attempt to rebut this presumption of unconstitutionality by "demonstrating that [the Magazine Ban] is consistent with the Nation's historical tradition of firearm regulation." *Id*., at 2130.

The State can meet its history and tradition burden by demonstrating that its ban is consistent with the "historical tradition of prohibiting the carrying of dangerous and unusual weapons." *D.C. v. Heller*, 554 U.S. 570, 627 (2008). Plaintiffs do *not* have the burden of demonstrating that the magazines are in common use (i.e., not dangerous and unusual). They may, however, demonstrate that the State has no hope of carrying its "history and tradition" burden by introducing evidence that the magazines are in common use, because there is no historical tradition of banning arms in common use. *Heller*, 554 U.S. at 629. Therefore, Plaintiffs have designated

3

Mr. Passamaneck to testify regarding the number of magazines in the United States of the type banned by the Magazine Ban.

## II. The State Has Previously Stipulated that the Magazines are in Common Use

Before turning to Mr. Passamaneck's opinion, Plaintiffs note that in *Colorado Outfitters* and *RMGO II*, the State stipulated that the number of magazines of the type banned by the statute is in the millions. For example, in *Colorado Outfitters*, the State stipulated as follows:

> Although the total number of magazines of any size in the United States is not known, **the number of large capacity magazines is in the tens of millions**.

Exhibit 1, Stipulated Facts Section to Proposed Final Pretrial Order filed in *Colorado Outfitters* on January 31, 2014 ¶ 25 (emphasis added). And in *RMGO II*, the State stipulated as follows:

> Although the total number of magazines of any size in Colorado is not known, **the number of magazines with a capacity greater than 15 rounds is in the millions**.

Exhibit 2, "Stipulations" attached to Proposed Trial Management Order, filed in *RMGO II* on April 4, 2017 ¶ 20 (emphasis added).

The State has suggested that the State as such did not enter into these stipulations because Governor Hickenlooper was the nominal defendant when they were made. This is wrong. Governor Hickenlooper was sued in his official capacity. 24 F. Supp. 3d at 1054; 467 P.3d 314. A suit against a state official in his or her official capacity is no different than a suit against the State itself. *Muscogee (Creek) Nation v. Oklahoma Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010) (federal law)

4

(quotation marks and citation omitted); *Ainscough v. Owens*, 90 P.3d 851, 858 (Colo. 2004) (state law). "For litigation purposes, the Governor is the embodiment of the state." *Ainscough*, 90 P.3d at 858. Thus, while Governor Hickenlooper was the nominal defendant in *Colorado Outfitters* and *RMGO II* (as Governor Polis is the nominal defendant in this case), both cases were, in substance, suits against the State itself, and the State entered into the stipulations.

Thus, in both *Colorado Outfitters* and *RMGO II*, the State effectively stipulated that the magazines are in common use. This is not surprising because this fact is uncontroversial. *See*, e.g., *Duncan v. Becerra*, 970 F.3d 1133, 1142, 1148 (9th Cir. 2020) (many of the most popular handguns and rifles in America come with magazines with a capacity greater than 15).[2]

In this case, the State has not made the same stipulations that it made in *Colorado Outfitters* and *RMGO II*. Moreover, the State has filed a motion requesting the Court to issue an order declaring that its previous stipulations are not conclusively binding on it. *See* State's Motion dated October 13, 2022 (ECF 29). But even if the State's previous stipulations are not conclusively binding on it, they are nevertheless evidence in this case. This is because nothing prohibits a party from pointing to statements in a prior case as evidence supporting a subsequent case. *Bohnenkamp v. Hog Slat, Inc.*, 549 F. Supp. 3d 937, 946 n.7 (N.D. Iowa 2021).

---

[2] *reh'g en banc granted, opinion vacated on other grounds*, 988 F.3d 1209 (9th Cir. 2021), *cert. granted, judgment vacated on other grounds,* 142 S. Ct. 2895 (2022), and *vacated and remanded on other grounds*, 49 F.4th 1228 (9th Cir. 2022).

5

"Judicial admissions are formal, deliberate declarations which a party or his attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute. *Asarco, LLC v. Noranda Mining, Inc.*, 844 F.3d 1201, 1212 n.3 (10th Cir. 2017) (internal citations and quotation marks omitted). Such admissions are binding in the entirety of the case in which they were made. *Id*. In contrast, ordinary "evidentiary admissions" can be controverted or explained by a party. *Id*. Such admissions include judicial admissions in another case. *Id*., *quoting* 30B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 7026 (Kenneth W. Graham, Jr. & Michael H. Graham eds., 4th ed. 2014). Thus, a judicial admission in a case would be an evidentiary admission in a subsequent case. *Id*. Such is the case here. The stipulations the State made in *Colorado Outfitters* and *RMGO II* were judicial admissions in those cases, and they are ordinary evidentiary admissions in this case. The State will be free to argue that its prior stipulations were made in error, but it cannot exclude them altogether. Tellingly, to date the State has not adduced any evidence that its prior stipulations were erroneous.

### III.  Mr. Passamaneck is Qualified to Render the Challenged Opinion

Plaintiffs have designated Mr. Passamaneck to testify regarding two topics: (1) an estimate of the number of magazines with a capacity in excess of 15 rounds in the United States; and (2) the operation and durability of these magazines. The State does not challenge Mr. Passamaneck's opinions on the second topic. Mot. 2,

6

n.1. But the State argues that Mr. Passamaneck is not qualified to render an opinion regarding the first topic. This is not the case.

Rule 702 requires that a witness have expertise resulting from "knowledge, skill, experience, training, or education." Any of these qualifications can be sufficient to support a finding that an expert is qualified. *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008), *citing* Fed.R.Evid. 702 Advisory Committee Notes, 2000 Amendments. "Indeed, in some fields, experience alone is the predominant, if not sole, basis for a great deal of reliable expert testimony." *Id*. (internal quotation marks and citations omitted).

Rule 702 does not impose an "overly rigorous" requirement of expertise, recognizing that specialized knowledge may be acquired through a broad range of experience, skills or training. *Squires ex rel. Squires v. Goodwin*, 829 F. Supp. 2d 1041, 1048 (D. Colo. 2011) (*citing United States v. Velasquez*, 64 F.3d 844, 849 (3rd Cir.1995)). It is sufficient if the expert's experience or knowledge in a field make it appear that his opinion rests on a substantial foundation and aids the trier of fact in its search for truth. *Id*., 829 F. Supp. 2d at 10418 (internal quotation marks and citations omitted).

Mr. Passamaneck easily meets these criteria. He is the owner of Carbon Arms Corp., a firearms products manufacturing and design company. Passamaneck Deposition Transcript, 175:15-21;[3] Exhibit 13. He has approximately 30 years of professional firearms experience as a firearms instructor, engineer and

---

[3] The transcript of Mr. Passamaneck's deposition is attached to the State's motion and will be referred to as "Transcript."

manufacturer. Transcript 180:22–181:8. He has read literally thousands of firearms related articles. Transcript 181:9-17. He has been to numerous firearms tradeshows. Transcript 182:19-25. He has consulted directly with firearms manufacturers and designed firearms and firearm components for manufacturers. Transcript 181:18-24. He has personally spoken to over 100 firearms manufacturer agents and representatives. Transcript 181:25–182:4. Mr. Passamaneck's company produced firearms magazines through 2012, and he is familiar with the market for firearm magazines, having previously sold in that market. Transcript 182:5-11.

Mr. Passamaneck also founded a firearms training company and has trained thousands of individuals in the use of firearms. Ex. 13. He has written a number of acclaimed firearms training texts. *Id*. He has attended seminars by some of the top firearms instructors in the country and obtained numerous certifications. *Id*. He is a life member of the NRA and the Colorado State Shooting Association. *Id*. He is a member of other organizations as well, including the Glock Sport Shooting Foundation and the United States Practical Shooting Association. *Id*. He is an accomplished shooter familiar with a wide array of topics related to shooting and firearms. *Id*.

In summary, Mr. Passamaneck's decades of experience in the firearms field, including experience as a manufacturer of firearms magazines, make him qualified to render an opinion on the topic of an estimate of the number of magazines with a capacity greater than 15 rounds in the United States.

The State argues that Mr. Passamaneck is not qualified because he is not an expert in statistical analysis. Mot. 3. This objection misses the mark because Plaintiffs have not designated Mr. Passamaneck as an expert in statistical analysis. The data relied upon by Mr. Passamaneck, including most prominently trade reports from the National Shooting Sports Foundation ("NSSF"), involves obtaining information directly from manufacturers about the number of magazines they produced and compiling those numbers. Transcript, 18:10-20:5. Thus, Mr. Passamaneck testified that sophisticated statistical analysis was not necessary to reach conclusions about the number of magazines in circulation. Transcript, 18:15-19. It is a matter of counting, not statistical analysis. Therefore, it is not necessary for Mr. Passamaneck to be an expert in statistical analysis to rely on this data, and the State's objection is meritless.

**IV.   Mr. Passamaneck's Opinion and the Basis for the Opinion**

Mr. Passamaneck's opinion (Ex. A) is based primarily on the following information:

(a) An industry compilation produced by NSSF. (Ex. 11). This compilation concludes there are approximately 304 million total magazines in the United States. Ex. 11, p. 7. This includes 79 million rifle magazines with a capacity of 30 rounds or more and 71 million handgun magazines with a capacity over ten rounds.

(b) A 2021 Survey conducted by Georgetown University Professor William English. Ex. 10. This survey estimates that Americans have owned some 542 million

rifle and handgun magazines that hold more than 10 rounds, with the most common capacity being in excess of 15 rounds. Ex. 10, 24-25.

(c) Information received directly from an executive vice president of Mag-pul, the largest manufacturer of AR-15 magazines. Transcript, 120:7-11; 146:23-147:11; Ex. A, 2. Mag-pul estimates there are approximately 350 million magazines with a capacity in excess of 15 rounds.

(d) A 2022 Washington Post survey (*Why do Americans own AR-15s?* (March 27, 2023) (available at bit.ly/3G0vbG9)) and NSSF information about the ownership of AR-15 rifles. The number of AR-15s is *not* an issue in this litigation, and Mr. Passamaneck did not render an opinion on this issue. Rather, he used the reported information as a datapoint supporting his estimate of the number of magazines, because most AR-15s are sold with magazines with a capacity greater than 15. Ex. A, 2.

Based on this data, Mr. Passamaneck estimated that in the United States there are approximately 100 million handgun magazines and 250 million rifle magazines with a capacity in excess of 15 rounds. Exhibit A, 2. This is a mid-point between the lower NSSF estimates and the higher Mag-pul and English estimates. Mr. Passamaneck testified that the NSSF data is "very trustworthy" because the trade group compiles information obtained directly from its member manufacturers. Transcript. 19:25-20:5. The information is, however, a conservative lower bound (*Id.*, 179:1-9), because some major manufacturers are not members. *Id.*, 100:20-101:4. This is significant, because even at the extreme lower bound of the data relied

10

upon by Mr. Passamaneck, NSSF estimates there are over 79 million magazines with a capacity in excess of 15 rounds. This is consistent with the State's prior stipulations (tens of millions) and sufficient in itself to establish common use.

### V. Mr. Passamaneck's Opinion is Reliable

The proponent of expert testimony must show that the methodology applied by the witness is reliable, that sufficient facts and data were used, and that the methodology was otherwise reliably applied. *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008), *citing Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999). Mr. Passamaneck's opinion easily meets all of these criteria.

Mr. Passamaneck's method for reaching an opinion about the estimated number of magazines with a capacity in excess of 15 rounds was to obtain data from various sources, most prominently reports issued by the NSSF. The NSSF is a firearms industry trade group that compiles and reports market information from manufacturers. Transcript, 19:25–20:5. The NSSF report is Mr. Passamaneck's primary source. Transcript 19:25-20:5 (NSSF information very trustworthy). Rule 703 requires only that an expert's data be of a type reasonably relied upon by experts in the field. As a general matter, "the cases uniformly recognize that trade and industry publications and compilations can be appropriate sources of facts and data upon which an expert can reasonably rely." *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 646, 656 (N.D. Ill. 2006) (collecting cases). With respect to experts in the field of firearms in particular, courts have held that such experts may rely on firearms trade books and other reference materials. *See, e.g., United States v.*

*Thornton*, 642 F.3d 599, 607 (7th Cir. 2011); *United States v. Ware*, 914 F.2d 997, 1003 (7th Cir. 1990); and *United States v. Gresham*, 118 F.3d 258, 266 (5th Cir. 1997).

Numerous courts have relied on NSSF reports in reaching conclusions about the number of firearms and/or magazines in circulation, including the same NSSF report relied upon by Mr. Passamaneck. *See Barnett v. Raoul*, 2023 WL 3160285, at *10 (S.D. Ill. Apr. 28, 2023) (citing NSSF report for number of arms in circulation); *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 2023 WL 2655150, at *6 (D. Del. Mar. 27, 2023) (same); *Miller v. Bonta*, 542 F. Supp. 3d 1009, 1022 (S.D. Cal. 2021), *vacated and remanded on other grounds*, 2022 WL 3095986 (9th Cir. 2022) (same); *Ass'n of New Jersey Rifle & Pistol Clubs Inc. v. Att'y Gen. New Jersey*, 974 F.3d 237, 256 (3d Cir. 2020), *cert. granted, judgment vacated on other grounds* 142 S. Ct. 2894 (2022) (Matey J. dissenting) (same); *Friedman v. City of Highland Park*, 68 F. Supp. 3d 895, 904 (N.D. Ill. 2014) (same); *Kolbe v. O'Malley*, 42 F. Supp. 3d 768, 786 (D. Md. 2014) (same); and *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 990 F. Supp. 2d 349, 364 (W.D.N.Y. 2013) (same).

In addition, when the firearms experts at the Congressional Research Office needed to provide Congress with data regarding the prevalence of certain types of firearms, they turned to the information contained in NSSF reports. See Exhibit 15, p.2.

In summary, experts in numerous cases have based their opinions on NSSF reports. Indeed, the State's own expert witness has based his opinions in another

12

case pending in this court on the same NSSF report relied on by Mr. Passamaneck. The State has designated Louis Klarevas as an expert in this case. Mr. Klarevas also serves as an expert in the case of the case of *Rocky Mountain Gun Owners v. Town of Superior*, Case No. 22-cv-2680, pending in another division of this Court. On May 5, 2023, Dr. Klarevas submitted a declaration in *Town of Superior* in which he cited the very NSSF report relied upon by Mr. Passamaneck to support his conclusions.[4] See Exhibit B. The report relied upon by Dr. Klarevas contains the same magazine chart relied on by Mr. Passamaneck. That chart sets forth an estimate of 79 million magazines with a capacity of 30 rounds or more. Ex. 11, p. 7. There can be no question that NSSF compilation reports are the gold standard for data about the number of arms in the United States, as even the State's own expert implicitly acknowledges.

Mr. Passamaneck also cited a survey published by Georgetown University Professor William English. In *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 2023 WL 2655150, at *6 (D. Del. Mar. 27, 2023), the court relied on Dr. English's study in reaching its conclusions regarding the common use issue. *Id*. ("Taken together, these data [including the English survey] suggest that the banned assault long guns are indeed 'in common use' for several lawful purposes, including self-defense.").

Mr. Passamaneck also supported his conclusions with information he obtained directly from an executive vice president of Magpul, the largest

---

[4] Dr. Klarevas relied on the 2020 NSSF report (Ex. B, 11, n. 8) as did Mr. Passamaneck. Transcript, 78:14-17.

13

manufacturer of AR-15 magazines in the country. Transcript, 120:7-11; 146:23-147:11.[5] Numerous courts have held that a firearms expert may rely on information obtained directly from manufacturers. *See e.g.*, *United States v. Gresham*, 118 F.3d 258 (5th Cir. 1997). The State asserts that Mr. Passamaneck merely "parrot[ed]" Magpul's statement. Mot. 12. But this is not a valid objection. It is true that Mr. Passamaneck's report would be objectionable if it *merely* quoted a statement from Magpul. But that is not the case. Instead, he applied his expertise to synthesize various sources, including the Magpul statement, to reach his conclusions. In *Gresham*, the court rejected an argument identical to the one advanced by the State here. In that case, firearms experts based their opinions in part on discussions with manufacturers. *Id.*, 118 F.3d at 266. The defendant objected on hearsay grounds. The court allowed the expert testimony, holding that experts may base their opinion on hearsay, including discussions with firearms manufacturers. *Id.*

Ironically, the very case cited by the State, *Colo. Mont. Wyo. State Area Conference of the NAACP v. U.S. Election Integrity Plan*, 2023 WL 3865720 (D. Colo. June 7, 2023), supports Plaintiffs' position, not the State's. In that case, the defendants moved to exclude an expert because he had based his opinion on hearsay statements. The court rejected the defendants' argument for the same reasons set forth by the court in *Gresham*. *Id.* at *2. Specifically, the court held that while an expert may not merely parrot out-of-court statements, they can use synthesize

---

[5] The State does not suggest that Mr. Passamaneck cannot based his opinions on personal observations. Nor could it. *See St. Martin v. Mobil Exploration & Producing U.S., Inc.*, 224 F.3d 402, 406–07 (5th Cir. 2000) (expert may base conclusions on personal observations).

various out-of-court statements to develop their opinion. *Id*. This is exactly what Mr. Passamaneck did here. He did not merely parrot the Mag-pul executive's statement. He used it as one source as he synthesized the data to reach his opinion.

## VI. The State's Other Objections to the Admissibility of Mr. Passamaneck's Testimony are Meritless

The State raises various additional objections to Mr. Passamaneck's testimony, each of which is meritless. The State cites *Fish v. Kobach,* 304 F. Supp. 3d 1027 (D. Kan. 2018), where an expert was excluded because his testimony was based entirely on a voter confusion survey performed by another person. *Id*., at 1038. But the NSSF report is not a "survey" like the voter confusion survey in *Fish*. Rather, it is a compilation of data by a trade group that is generally deemed reliable by experts in the firearms field. Such compilations are "uniformly recognize[d]" as an appropriate source of facts for an expert. *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 646, 656 (N.D. Ill. 2006). Indeed, the court in *Sulfuric Acid Antitrust Litigation* rejected the exact argument advanced by the State here. There the plaintiffs moved to exclude because the expert relied on a report that, like the NSSF report, compiled industry data and was accepted in the industry as a reliable source of information. The plaintiffs cited cases involving consumer confusion surveys (as the State cites a case concerning a voter confusion survey) in support of their argument, but the court held that cases about consumer confusion surveys are not relevant to and do not control whether an expert may rely on a compilation of industry data that is widely accepted in the field. *Id*., 235 F.R.D. at 657.

Next, the State takes issue with Mr. Passamaneck's estimate of the number of AR-15s and handguns. Mot. 9-10. The number of firearms is not, however, an issue in this case. Mr. Passamaneck used these numbers merely as datapoints in support of his estimate of the number of magazines. Mr. Passamaneck testified his information about the number of firearms is supported by the NSSF reports, and as discussed above, his reliance on the NSSF reports is entirely justified. This is true even if he made an error. Plaintiffs are not required to show that Mr. Passamaneck's report is "indisputably correct" for his testimony to be admissible, so long as the method he employed is sound. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005) (internal quotation marks and citation omitted). The evidentiary requirement of reliability is lower than the merits standard of correctness." *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1085 (D. Colo. 2006) (cleaned up). Gaps or inconsistencies in an expert's reasoning may go to the weight of the expert evidence, not its admissibility. *Id.* This is not to say that Plaintiffs concede that Mr. Passamaneck erred. The point is that even assuming arguendo that he did, the State's objection is nevertheless invalid.

The State says Mr. Passamaneck criticized the Washington Post and English surveys. Mot. 10-11. It is true that Mr. Passamaneck criticized the Washington Post's estimate of the number of AR-15 owners (again, not an issue in this case) to the extent it diverged from the NSSF report, which he considered more reliable. Transcript, 78:24-80:12. He also testified that the English report's estimate of "defensive gun use" (also not an issue about which Mr. Passamaneck opined) seemed

16

high. Transcript, 93:23-95:3. Mr. Passamaneck's belief that the NSSF data is more reliable than other data and his candid criticism of aspects of the Washington Post and English reports does not mean his testimony is inadmissible, especially when that criticism concerns matters that have no bearing at all on his opinion (such as defensive gun use).

The State distorts Mr. Passamaneck's discussion of the NSSF data. Mr. Passamaneck never said, as the State implies, that the NSSF data is generally not accurate. Mot. 11. Instead, he testified the NSSF data is conservative because it does not encompass data from all manufacturers. Transcript, 179:1-9; 100:20-101:4. And in the passage cited by the State, he testified that for that reason, while the NSSF numbers are accurate as far as they go, they can only be relied upon as a "bottom number" not a "top number." Transcript, 167:19-168:9. Again, even the NSSF bottom number establishes common use.

The State argues that Mr. Passamaneck cannot rely on his three decades of experience in the firearms industry to support his opinion. Mot. 11. This is not accurate. Rule 702 specifically states that experience may be the basis of an opinion. "Indeed, in some fields, experience alone is the predominant, if not sole, basis for a great deal of reliable expert testimony." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008) (internal quotation marks and citations omitted).

The State objects because Mr. Passamaneck did not independently verify the NSSF report, the English report and the Washington Post survey. Mot. 11. But it is not necessary for an expert independently to verify reports upon which he relies so

17

long as the reports are of the type relied upon in the field. *Tilstra v. BouMatic LLC*, 791 F.3d 749, 753 (7th Cir. 2015); *see also Arkansas River Power Auth. v. Babcock & Wilcox Power Co.*, 2016 WL 9734682, at *4 (D. Colo. 2016) (expert not required independently to verify facts relied upon). In *Droplets, Inc. v. Yahoo! Inc.*, 2021 WL 9038355 (N.D. Cal. 2021), the defendant, like the State here, objected to an expert's report because he did not verify the studies he relied on. The court rejected the defendant's argument, holding: "it is black letter law that "[t]he facts or data relied upon [by an expert] need not be otherwise admissible if they are 'of a type reasonably relied upon by experts in a particular field.'" *Id.*, at *11 (*quoting Scott v. Ross*, 140 F.3d 1275, 1285-86 (9th Cir. 1998)).

Finally, the State asserts that Mr. Passamaneck made errors in his report in terms of transcribing source data, grammar, and arithmetic. Mot. 13-14. But attacks of this nature go to the "credibility of the testimony, not the admissibility." *McCullon v. Parry*, 2021 WL 4947237, at *12 (D. Colo. June 23, 2021) (quotation omitted). These are matters the State may bring up on cross-examination. *Obeslo v. Great-W. Cap. Mgmt., LLC*, 2019 WL 1651844, at *6 (D. Colo. 2019). They are not a ground for excluding the testimony altogether. *See also Tuft v. Indem. Ins. Co. of N. Am.*, 2021 WL 1041801, at *2 (D. Colo. Feb. 4, 2021) ("[D]oubts . . . concerning the sufficiency of factual basis to support [the expert's] opinion goes to its weight, and not to its admissibility.") (q*uoting Werth v. Makita Electric Works, Ltd.*, 950 F.2d 643, 654 (10th Cir. 1991).

## VII. The State's Motion Should be Denied

In summary, Mr. Passamaneck's three decades of experience in the firearms field makes him qualified to render opinions about various topics related to firearms. Even the State concedes this point to some degree.[6] That experience, especially his experience as a manufacturer of magazines, qualifies him to render the opinion challenged by the State. The methods Mr. Passamaneck employed are reliable, and the data he used are generally relied upon by experts in the field. The State can hardly dispute this, since its own expert has relied on the same methods and data. Therefore, Mr. Passamaneck's testimony is admissible.

The State's assertions that Mr. Passamaneck made various errors do not change this conclusion. Plaintiffs do not concede such errors exist, but even if they do, the reliability of the method employed is the standard, not correctness. Only if the expert's opinion is so "fundamentally unsupported" that it can offer "no assistance" to the trier of fact should it be excluded. *McCullon v. Parry*, 2021 WL 4947237, at *12 (D. Colo. June 23, 2021). Far from being fundamentally unsupported, Mr. Passamaneck's report is well supported, and, therefore, the State's motion should be denied.

Respectfully submitted this 21st day of July 2023.

*/s/ Barry K. Arrington*

---

Barry K. Arrington
Arrington Law Firm
4195 Wadsworth Boulevard
Wheat Ridge Colorado 80033

---

[6] The State has not objected to Mr. Passamaneck's testimony on some of the firearms topics covered in this report.

Voice: (303) 205-7870
Email: barry@arringtonpc.com

Shaun Pearman
The Pearman Law Firm, P.C.
4195 Wadsworth Boulevard
Wheat Ridge Colorado 80033
Phone Number: (303) 991-7600
Fax Number: (303) 991-7601
E-mail: shaun@pearmanlawfirm.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2023, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via email to parties of record.

*/s/ Barry K. Arrington*
_____
Barry K. Arrington