

Updated August 4, 2022

# House-Passed Assault Weapons Ban of 2022 (H.R. 1808)

On July 29, 2022, the House passed the Assault Weapons Ban of 2022 (H.R. 1808) by a recorded vote, 217-213 (Roll no. 410). This bill would prohibit the importation, sale, manufacture, transfer, or possession of certain firearms classified as "semiautomatic assault weapons" (SAWs). It would also ban large capacity ammunition feeding devices (LCAFDs), or magazines and other devices that can hold and/or feed more than 15 rounds of ammunition into a firearm. Supporters of the bill believe that it may curtail the availability of firearms and devices that have contributed to the deadliness of recent mass public shootings, particularly AR-15-type rifles. Opponents of the bill maintain that AR-15 rifles are functionally no deadlier than other semiautomatic rifles.

### Semiautomatic v. Full Auto
Self-loading firearms come in two variants: semiautomatic and fully automatic. Semiautomatic firearms redirect some of the energy of a fired round of ammunition to eject a spent casing and chamber a fresh round. Semiautomatic firearms can be fired continuously, but only shoot one round per trigger pull. They are not machineguns, which are fully automatic and fire multiple rounds while the trigger is pulled back until the available ammunition is spent or the trigger is released. All modern firearms capable of firing self-contained, fixed ammunition (casing, primer, propellant, and projectile(s)) are regulated under the Gun Control Act of 1968 (GCA, 18 U.S.C. §§921 et seq.). Semiautomatic firearms are generally regulated under the GCA. Machineguns, short-barreled rifles and shotguns (some of which are semiautomatic), as well as smoothbore handguns are further regulated under the 1934 National Firearms Act (NFA; 26 U.S.C. §§5801 et seq.).

### What Are "Assault Weapons"?
According to many firearms experts, "assault rifles" were developed during World War II to provide a lighter infantry shoulder arm that could fire more rounds, more rapidly, and more easily. To increase capacity of fire, detachable, self-feeding magazines were incorporated into these rifles. Many were configured with a "select fire" feature that allowed them to be fired in fully automatic mode, in short bursts (such as three rounds per pull of the trigger), or in semiautomatic mode (one round per pull of the trigger). Mid-size rifle cartridges were adopted, so more ammunition could be carried, and the ammunition loads would be lighter. Mid-size rifle rounds reduce the recoil or "kick," making such rifles easier to handle and keep on target. Ease of handling was further enhanced by gas-operated actions that redirect gases of a fired round from a barrel port, back through a tube, and into the firearm receiver and action, activating the bolt carrier and trigger assemblies. Hence, it makes the firearm action more efficient and reduces muzzle climb. Some gun experts argue that all true assault weapons are at least fully automatic—that is, machineguns.

The two semiautomatic firearms most widely available to the American public that could be considered variants of military-issued "assault weapons" would be the Armalite (AR) and *Avtomat Kalashnikova* (AK) rifles. AR-type firearms are most often chambered for 5.56x45mm cartridges, a small caliber, high velocity round that was based on a civilian cartridge, .223 Remington. It is notable that the AR-15 is modular in design and can be outfitted with upper receivers and barrels that can accommodate a wider variety of cartridges, from .22 long rifle to .308 Winchester. AK-type firearms are generally chambered for 7.62x39mm cartridges, the round normally associated with AK-47s. In response to the American 5.56x45mm cartridge, the Soviet Union developed a comparable small caliber, high velocity cartridge, 5.45x39mm. In fully automatic fire, an AR-15 firearm in the hands of a well-trained shooter has an effective firing rate of 100 to 150 shots-per-minute (spm), and in semiautomatic fire, 45 to 65 spm. In full automatic fire, an AK-47 has an effective firing rate of 100 spm, and in semiautomatic fire, 40 spm. The Soviets also produced an AK-type firearm chambered for 12 gauge shot shells, a shotgun known as the Saiga.

### Expired 1994-2004 SAW-LCAFD Ban v. H.R. 1808
Under the Violent Crime Control and Law Enforcement Act of 1994 (P.L. 103-322), Congress enacted a 10-year ban on the possession, transfer, and further domestic manufacture of SAWs and LCAFDs. Under the now-expired ban, SAWs were defined in two ways. First, certain firearms, or copies or duplicates of those firearms in any caliber, were defined as SAWs by make (in most cases) and model (e.g., the Colt AR-15 rifle, INTRATEC TEC-9 pistol, or revolving cylinder shotguns similar to the Street Sweeper). Second, other firearms were defined as SAWs if they included any two of several specified characteristics. For example, a rifle met the SAW definition if it was able to accept a detachable magazine and included two or more of the following five features: (1) a folding or telescoping stock; (2) a pistol grip that protruded conspicuously below the action of the firearm; (3) a bayonet mount; (4) a muzzle flash suppressor or threaded barrel capable of accepting such a suppressor; or (5) a grenade launcher. There were similar definitions for pistols and shotguns classified as SAWs. The expired LCAFD ban also prohibited detachable magazines with a capacity to hold more than 10 rounds. SAWs and LCAFDs that were legally possessed prior to the date of enactment were exempted from the ban and remained legally transferrable under applicable federal and state laws. Arguably, however, the U.S. firearms industry quickly adapted by removing the requisite number of offending



characteristics (e.g., the bayonet lug and flash suppressor), producing "sporterized" variants of the banned firearms.

H.R. 1808 is modeled on previous law. It too would ban certain firearms by make and model (e.g., the Bushmaster XM15 rifle, CZ Scorpion pistol, IZHMASH Saiga 12 shotgun). Other firearms would be defined as SAWs if they included any *one* of several specified characteristics, a move that could make it more difficult for the industry to adapt and "sporterize" banned firearms. While H.R. 1808 as introduced would have banned LCAFD capable of holding more than 10 rounds, the reported bill would ban such devices capable of holding more than 15 rounds. Both versions of H.R. 1808 would also ban semiautomatic rifles and pistols with fixed (as opposed to detachable) magazines that hold more than 15 rounds.

Under its one characteristic test, H.R. 1808 would ban any semiautomatic *rifle* that has the capacity to accept a detachable ammunition feeding device that is not a fixed magazine and has one of the following characteristics: (1) pistol grip; (2) forward grip; (3) a folding, telescoping, or detachable stock, or is otherwise foldable or adjustable in a manner that operates to reduce the length, size, or any other dimensions, or otherwise enhances the concealability, of the weapon; (4) a grenade launcher; (5) a barrel shroud; or (6) a threaded barrel. It would also ban any semiautomatic rifle that has a fixed ammunition feeding device with the capacity to accept more than 15 rounds, except for an attached tubular device designed to accept, and capable of operating only with .22 caliber rimfire ammunition.

H.R. 1808 would ban any semiautomatic *pistol* that has an ammunition feeding device that is not fixed and has any one of the following characteristics: (1) a threaded barrel; (2) a second pistol grip; (3) a barrel shroud; (4) the capacity to accept a detachable magazine at some location outside the pistol grip; (5) a semiautomatic version of an automatic firearm; (6) a manufactured weight of 50 ounces or more when unloaded; or (7) a buffer tube, stabilizing brace or similar component that protrudes horizontally behind the pistol grip. Also, it would ban any semiautomatic pistol with a fixed ammunition feeding device that has the capacity to accept more than 15 rounds.

H.R. 1808 would ban any semiautomatic *shotgun* that has the capacity to accept a detachable ammunition feeding device or fixed ammunition feeding device that has the capacity to accept more than five rounds and has any one of the following characteristics: (1) a folding, telescoping, or detachable stock; (2) a pistol grip or bird's head grip; (3) a fixed magazine with the capacity to accept more than five rounds; (4) a forward grip; or (5) a grenade launcher. Also, it would ban any shotgun with a revolving cylinder.

H.R. 1808 as introduced and reported would grandfather in SAWs and LCAFDs lawfully held prior to enactment. Unlike H.R. 1808 as introduced, however, the reported bill would allow grandfathered firearms to be transferred, but such transfers would be required to be made through a federally licensed gun dealer, or federal firearms licensee (FFL), so a firearms eligibility check could be run on the transferee (buyer/recipient) through the National Instant Criminal Background Check System. However, grandfathered LCAFDs would be nontransferable, meaning they would become contraband whenever their lawful owners give up custody. Notably, the reported bill would also prohibit non-FFLs from storing or keeping under their dominion or control any grandfathered firearm that they know or have reasonable cause to believe would be accessible to any person prohibited from receiving or possessing a firearm under 18 U.S.C. §922(g), (n), or (x).

### AR- and AK-Type Rifles in Circulation

There are roughly 400 million firearms available for civilian transfer in the United States. According to one estimate, there were an estimated 1.5 million SAWs in civilian circulation in 1994. According to the National Shooting Sports Foundation (NSSF), from 1990 through 2020, nearly 24.5 million AR- and AK-type rifles were introduced into the U.S. civilian gun stock. Over the same 31 years, according the Bureau of Alcohol, Tobacco, Firearms and Explosives, over 249.3 million firearms have been introduced into the U.S. civilian gun stock. Interestingly, the NSSF data shows over 870,000 AR- or AK-type rifles being introduced into the U.S. civilian gun stock from 1990 to 1994, meaning that such rifles may have possibly constituted more than half of SAWs in civilian circulation at that time. In 2020 alone, nearly 17 million firearms were introduced into the U.S. civilian gun stock, of which an estimated 2.8 million were AR- or AK-type rifles. It is notable that in the past 15 years, AR- and AK-type pistols have become increasingly popular with the gun-owning public. These pistols may not be reflected in the NSSF data, but they would likely be banned under H.R. 1808 because they typically weigh more than 50 ounces unloaded. For more information on such pistols, see CRS In Focus IF11763, *Handguns, Stabilizing Braces, and Related Components*.

### Gun Violence and Mass Public Shootings

In any given year, between two-thirds and three-quarters of all criminal homicides in the United States are committed with firearms. About one-half of those homicides are committed with handguns. From 1997 to 2020, CRS confirmed that there were roughly 30 quadruple or greater homicides, on average, per year in the United States. From 1997 to 2020, CRS identified 729 quadruple or greater homicide incidents. In 500 of those homicide incidents, at least four victims were killed by gunfire. In another 62 incidents, at least some of the victims were killed by gunfire. In 167 incidents, the victims were killed in some other manner (e.g., stabbings, bludgeonings, arson, bombings, etc.). Of these 729 incidents, CRS has classified 124 as "mass public shootings," defined as any incident in which four or more victims died by gunfire in public location(s) and the murders are not attributable to any other underlying criminal activity or commonplace circumstance. In 45 of those incidents (36%), the assailants carried rifles or pistols capable of accepting detachable magazines that might have previously fallen under the expired SAW ban and may now fall under H.R. 1808. Since the July 20, 2012, Aurora, CO, theater shooting, in 63 mass public shootings, 26 assailants (41.3%) used AR-type rifles or pistols and two assailants used AK-type firearms. For further information,

House-Passed Assault Weapons Ban of 2022 (H.R. 1808)

see CRS Report R44126, *Mass Murder with Firearms: Incidents and Victims, 1999-2013*.

**William J. Krouse**, Specialist in Domestic Security and Crime Policy

IF12174

## Disclaimer

This document was prepared by the Congressional Research Service (CRS). CRS serves as nonpartisan shared staff to congressional committees and Members of Congress. It operates solely at the behest of and under the direction of Congress. Information in a CRS Report should not be relied upon for purposes other than public understanding of information that has been provided by CRS to Members of Congress in connection with CRS's institutional role. CRS Reports, as a work of the United States Government, are not subject to copyright protection in the United States. Any CRS Report may be reproduced and distributed in its entirety without permission from CRS. However, as a CRS Report may include copyrighted images or material from a third party, you may need to obtain the permission of the copyright holder if you wish to copy or otherwise use copyrighted material.