IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-CV-1866-GPG-SKC

BENJAMIN GATES,
TRAVIS SWARTZ,
KARL HONEGGER, and
NATIONAL FOUNDATION FOR GUN RIGHTS, INC.

  Plaintiffs,

v.

JARED S. POLIS, in his official capacity as Governor of the State of Colorado,

  Defendant.

## THE GOVERNOR'S MOTION TO STRIKE PLAINTIFFS' SUMMARY JUDGMENT DECLARATION OF MR. MARK PASSAMANECK UNDER FEDERAL RULE OF CIVIL PROCEDURE 37(c).

  In this action, Plaintiffs disclosed a single expert witness: a forensic engineer named Mark Passamaneck. Consistent with the Court's Scheduling Order, (D. 37), as amended (D. 49), Plaintiffs disclosed Mr. Passamaneck on April 12, 2023. In his report, Mr. Passamaneck opines on two topics: (1) the number of AR-15 style semi-automatic rifles and large-capacity magazines ("LCMs") in the United States; and (2) the operation and durability of firearm magazines. *See* Ex. 45 to the Gov.'s Mot. for Summ. J. (D. 74-19)[1] (Expert Report of Mark Passamaneck) ("Passamaneck Report" or the "Report").

---

[1] Unless otherwise noted, references in this motion to numbered exhibits will be to exhibits attached to the Governor's Motion of Summary Judgment (D. 73, 74), and Plaintiffs' Motion for Summary Judgment (D. 76).

After deposing Mr. Passamaneck, the Governor moved to exclude his opinions on the first topic. (D. 56). Three weeks later, at the end of July, Plaintiffs opposed that motion. (D. 60). Now, nearly five months to the day after expert disclosures were due in this case, and more than two months after Defendants first challenged Mr. Passamaneck's qualifications and methodology, Plaintiffs attempt to rehabilitate Mr. Passamaneck's expert report with a declaration. Ex. 8 to Pls.' Mot. for Summ. J. (D. 76-8) ("Passamaneck MSJ Declaration" or the "Declaration"). But that declaration contains information that was absent from his original Report.

Plaintiffs cannot submit a contradictory, supplemental expert report more than three months after expert rebuttal reports were due. And Plaintiffs cannot meet their burden to show that Mr. Passamaneck's untimely supplemental report is justified or harmless. For these reasons, the Court should strike the Passamaneck MSJ Declaration

## CERTIFICATE OF CONFERRAL

The Governor's counsel conferred with counsel for the Plaintiffs on October 10, 2023. Plaintiffs' counsel indicated that Plaintiffs oppose the relief requested.

## ARGUMENT

**I. Plaintiffs cannot supplement Mr. Passamaneck's expert report by attaching an untimely and contradictory declaration to their motion for summary judgment.**

Mr. Passamaneck's expert declaration is a supplemental expert report, and should be struck for two reasons. First because it is untimely, and second because it goes beyond the subject matter of Mr. Passamaneck's original Report.

### A. Mr. Passamaneck's supplemental expert report is untimely.

"A party must make" disclosure of expert reports "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). A party "must supplement" its expert disclosure "under Rule 26(e)." Fed. R. Civ. P. 26(a)(2)(E). Under Rule 26(e), that supplementation must occur "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 37(c) applies equally to expert disclosures. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 951–52 (10th Cir. 2002). For "evidence [that a party] wishes to use," "[t]he consequence for failing to disclose such a document is ordinarily that the party may not then use that document to support its claims or defenses." *Hayes v. SkyWest Airlines, Inc.*, 12 F.4th 1186, 1202 (10th Cir. 2021). While Rule 37(c) contemplates a number of possible consequences for failing to disclose evidence, the "preclusion sanction [is] self-executing." *Edens v. The Netherlands Ins. Co.*, 834 F.3d 1116, 1132 (10th Cir. 2016).

At the outset of this case, the Court set a deadline for expert disclosure, (D. 37), and amended that deadline once, (D. 49). The purpose of a scheduling order is to "offer a degree of certainty in pretrial proceedings, ensuring that, at some point, the claims and evidence are fixed so that parties may proceed to trial. They are not optional deadlines that can simply be ignored or

3

amended on a whim." *Lederman v. Boston Sci. Corp.*, No. 21-cv-02269-NRN, 2023 WL 3981385, at *1 (D. Colo. Mar. 14, 2023) (quotations omitted). Plaintiffs disclosed Mr. Passamaneck's expert report by the April 14, 2023, deadline. Relying on the scheduling order, the Governor deposed Mr. Passamaneck at the end of May. *See* Ex. 29 (D. 74-8). During his deposition, Mr. Passamaneck said that his Report included "all of the opinions that [he] would offer if called to testify at trial," and "the full basis for those opinions." *Id.* at 7:1–7. Mr. Passamaneck did not submit a rebuttal report to any of the Governor's experts.

But more than three months later, and almost two months after the close of discovery, Plaintiffs attached a supplemental expert disclosure to their Motion for Summary Judgment in the form of a declaration from Mr. Passamaneck. If Mr. Passamaneck's original Report included "all" of the opinions he would offer at trial, as well as the full basis for those opinions, then anything in that declaration not included in his original Report should be excluded under Fed. R. Civ. P. 37(c).

### B. Mr. Passamaneck's summary judgment declaration exceeds the bounds of supplementation.

Even if Mr. Passamaneck's supplemental report were not untimely, it should still be excluded Rule 37(c) because it exceeds the scope of Mr. Passamaneck's initial Report.

The supplemental disclosure provision in Rule 26(e)(1) is "not intended to provide an extension of the expert designation and report production deadlines and may not be used for [that] purpose." *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006) (quotations omitted). Thus, a "supplemental expert report that states additional opinions or rationales or seeks to 'strengthen' or 'deepen' opinions expressed in the original report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)." *Id.*

4

(citation omitted); *see also Munoz v. FCA US LLC*, Civ. No. 17-881 WJ/SCY, 2020 WL 7318076, at *4 (D.N.M. Dec. 11, 2020) ("[T]he purpose of supplementation is to correct inadvertent errors, not to allow a party to engage in gamesmanship by creating a new and improved expert report in order to gain tactical advantage or by bolstering opinions to avert a dispositive motion or an expert challenge." (quotations omitted)).

In *Schweizer v. DEKALB Swine Breeders, Inc.*, the plaintiffs disclosed an expert, who provided two reports before the expert disclosure deadline. 954 F. Supp. 1495, 1509–10 (D. Kan. 1997). The plaintiffs then attached an affidavit from that same expert to their response to the defendant's motion for summary judgment. *Id.* at 1509. The court struck the affidavit under Rule 37(c), not only because it was untimely, but also because the affidavit had a "much expanded opinion" and the opinions that were "fundamentally different" from the original reports. *Id.* at 1510; *see also Munoz*, 2020 WL 7318076, at *3 (striking an expert's affidavit attached to a response to a motion for summary judgment because the affidavit "offer[ed] new opinions").

Similarly here, the Passamaneck MSJ Declaration contains opinions that are contradictory to and not present in his initial Report. For example, the Declaration claims that "the National Shooting Sports Foundation ("NSSF") is a nationally recognized trade report for the firearms industry," and that "[t]he data reported in the NSSF report is highly reliable." Passamaneck MSJ Declaration, ¶¶ 5, 6. The Passamaneck Report cites the NSSF report, but never claims that NSSF is nationally recognized or "highly reliable." *See* Ex. 45 (D. 74-19) at 2. And Mr. Passamaneck testified that his initial Report contained "the full basis" for his opinions and "all of the facts underlying those opinions." Ex. 29 (D. 74-8) at 7:1–10.

In direct contrast to his declaration, Mr. Passamaneck also testified that the NSSF report was unreliable. In his deposition, he said that the magazine chart in the NSSF report was "not" "accurate." *Id.* at 167:11–168:9. Now, at summary judgment, when Plaintiffs want to rely on the NSSF magazine chart, Mr. Passamaneck apparently believes that the NSSF report, in general, "is highly reliable" and that the magazine chart, specifically, should be relied upon. Passamaneck MSJ Declaration, ¶¶ 6, 8.

Additionally, as in *Schweizer*, "the actual opinions advanced in the [Passamaneck MSJ Declaration] cannot be fairly said to be the natural product of receiving new materials after" the deadline for expert witness disclosure. 954 F. Supp. at 1510. The report is from "2020," long before Mr. Passamaneck prepared his initial report and not from the time period between the expert disclosure deadline and the summary judgment deadline. Passamaneck MSJ Declaration, ¶ 8; *see also* Ex. C to Def.'s Mot. to Exclude (D. 56-3) at 65 (copyright date of 2020 on the report).

Mr. Passamaneck also now claims that "there cannot be any doubt that as the State has previously stipulated, the number [of LCMs] is at least in the tens of millions and probably as many as 350 million." Passamaneck MSJ Declaration, ¶ 9. But Mr. Passamaneck testified that he had never seen the stipulations he is referencing in that Paragraph before preparing his initial Report and did not rely on them. Ex. 29 (D. 74-8) at 188:24–189:1. Reliance on a stipulation that Mr. Passamaneck previously said that he had never before seen is an additional "rationale[]" that

Plaintiffs are attempting to use to "strengthen" Mr. Passamaneck's opinions. *Cook*, 580 F. Supp. 2d at 1169 (quotation omitted).[2]

Finally, the declaration now describes the 2020 NSSF Report as saying that as of 2018, "there were at least 79 million LCMs in the United States." Passamaneck MSJ Declaration, ¶ 8. But in his original Report, Mr. Passamaneck did not say *what* the 79 million figure represented (e.g., owned, manufactured, etc.). Ex. 45 (D. 74-19) at 2 ("[T]he 2018 NSSF Magazine Chart estimates . . . 79 million rifles [sic] magazines of 30+ rounds."). As of May, Mr. Passamaneck was not sure whether the chart showed possession as of 2018 or possession across a period of 28 years. Ex. 29 (D. 74-8) at 139:4–21.

> **Q:** I mean, I think it seems pretty clear that from 1990 to 2018 there were 71.2 million[3] pistol magazines possessed by U.S. consumers. Do you disagree with that?
> **A:** I don't think that makes any sense.
> **Q:** Why?
> **A:** Because those numbers are just too high. I mean, so are you saying that you believe the chart says for a period of 28 years, 71 million magazines were owned over a period of 28 years? That's a weird way to compile data. This is what the chart says, but I think it's got some -- it's got some errors in it as far as specificity as to what those numbers actually mean.

---

[2] The Passamaneck MSJ Declaration also tries to bolster his qualifications by providing additional information about his experience with firearms and by attaching a "Firearms/Shooting Resume supplement." Passamaneck MSJ Declaration, ¶ 2, p 6. That information was not provided in his initial Report. *See* Ex. 45. Plaintiffs' belated bid to bolster Mr. Passamaneck's qualifications is a continuing theme. They attempted the same untimely bolstering in their response to the Governor's Rule 702 motion, but, as the Governor explained, "The Court should reject Plaintiffs' attempt to add qualifications to Mr. Passamaneck's Report that he himself did not include." Pls.' Reply ISO Mot. to Exclude (D. 71) at 1–4.

[3] This is another figure that appears in the same chart as the 79 million figure Mr. Passamaneck cites in his declaration. *See* Ex. C to Def.'s Mot. to Exclude (D. 56-3) at 54.

*Id.* at 140:22–141:10. Now, in his declaration, he belatedly picks a camp.[4]

"The duty to supplement does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness's report, and does not allow a party to file supplements intended to 'deepen' or 'strengthen' its own expert's prior Rule 26(a)(2)(B) report." *State Farm Mut. Auto. Ins. Co. v. Newmar Corp.*, 543 F. Supp. 3d 1079, 1084 (D.N.M. 2021) (citation omitted). Plaintiffs cannot supplement the Report by attaching an untimely and materially different Declaration to their motion for summary judgment.

## II. Plaintiffs cannot show that the untimely summary judgment declaration is justified or harmless.

"The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (quotations omitted). The Court considers four factors to make this determination: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id.*; *see also Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1129–30 (10th Cir. 2011) (applying the same factors at the summary judgment stage). "The party that fails to disclose has the burden of showing that its failure to comply with Rule 26(a)(2) was substantially justified or harmless." *Vanderlaan v. Ameriprise Auto & Home Ins.*, No. 20-cv-

---

[4] Even so, he is still mistaken. The chart he references does not show how many LCMs were possessed in 2018, but rather the number possessed in total between 1990 and 2018. *See* Ex. C to Def.'s Mot. to Exclude (D. 56-3) at 54 ("Estimated 304 Million Detachable Pistol and Rifle Magazines in U.S. Consumer Possession 1990 – 2018.").

00191-PAB-STV, 2021 WL 4441518, at *8 (D. Colo. Sept. 28, 2021). The first three factors weigh in favor of striking the Passamaneck MSJ Declaration under Rule 37(c).

*First*, the Governor is prejudiced by the Passamaneck MSJ Declaration. The Governor deposed Mr. Passamaneck based on the contents of his Report on May 31, 2023. *See* Ex. 29 (D. 74-8). The Governor then filed a motion to exclude one of Mr. Passamaneck's opinions under Rule 702 based on the initial Report and deposition. *See* Def.'s Mot. to Exclude (D. 56). That Rule 702 motion was based, in part, on Mr. Passamaneck's lack of expertise in statistical analysis and surveying methods (as shown by what he included in his report and what he said in his deposition), his own testimony that the NSSF report is unreliable, and his lack of understanding of how the NSSF report was compiled. *See id.*

In preparing his Motion for Summary Judgment, the Governor relied on the scheduling order to "offer a degree of certainty in pretrial proceedings, ensuring that, at some point, the claims and evidence are fixed." *Lederman*, 2023 WL 3981385, at *1 (quotations omitted). Here, that evidence include nine initial and rebuttal expert reports submitted by the Governor, and only Mr. Passamaneck's Report for the Plaintiffs. The Governor cited both the Report and Mr. Passamaneck's deposition testimony in his motion for summary judgment. The Gov.'s Mot. for Summ. J. (D. 73) at 15, 18, 38. The Governor even relied on Mr. Passamaneck's inability to understand the NSSF magazine chart, as shown through his Report and deposition testimony. *Id.* at 15 n.6.

Moreover, the Governor served rebuttal reports to Mr. Passamaneck's Report, but those reports did not address the obvious deficiencies in the NSSF Report. *See generally* Ex. 34 (D. 74-12). That was because Mr. Passamaneck himself had mis-cited the NSSF Report and

9

questioned its accuracy. *See generally* Def.'s Mot. to Exclude (D. 56) at 9, 10–11, 12. He claimed its data came from sources other than where that data actually originated, and repeatedly misrepresented its results. *See generally* Def.'s Reply ISO Mot. to Exclude (D. 71) at 10–12. Most importantly, he did not understand what the NSSF Report depicted, explaining that he "was literally just regurgitating what's on the chart," even though he "felt there was something missing from the chart," and "even spoke with people at the NSSF who did not know what the chart meant." *Id.* at 12.

Based on this testimony, and the limited scope of Mr. Passamaneck's original Report, the Governor did not request a rebuttal expert on the numerous deficiencies in the NSSF data. But now, in direct contrast to his previous testimony, Mr. Passamaneck describes the NSSF Report as "highly reliable." Passamaneck MSJ Declaration, ¶ 6. To allow Mr. Passamaneck to rehabilitate his testimony after the close of discovery and the deadline for rebuttal reports, is prejudicial. Particularly because the NSSF Report has come under intense scrutiny. *See, e.g.*, *Ore. Firearms Fed. v. Kotek*, -- F. Supp. 3d --, 2023 WL 4541027, at *10–11 (D. Ore. July 14, 2023) (finding that "the NSSF Magazine Chart is entitled to little weight" based on testimony from the NSSF's own Director of Research); Will Van Sant, *The Gun Industry's Trade Group is Using Flimsy Data in Big Court Cases*, TheTrace.org (Oct. 5, 2023), https://tinyurl.com/4ymypdwe.

"[T]he purpose of summary judgment is to determine, *based on all the evidence gleaned in discovery*, whether any disputed issues of material fact exist for trial." *Cloutier v. GEICO Ins. Co.*, No. CIV 11-0565 RB/WDS, 2013 WL 12087216, at *3 (D.N.M. Feb. 19, 2013) (emphasis added). The Governor "prepared [his] summary judgment motion based on the record that had been developed at that time." *Equal Emp. Opportunity Comm'n v. JBS USA, LLC*, No. 10-cv-

10

02103-PAB-KLM, 2016 WL 3078719, at *3 (D. Colo. May 6, 2016) (quotations omitted). Substituting the Passamaneck MSJ Declaration for his timely disclosed and challenged Report is prejudicial to the Governor.[5]

*Second*, the Governor cannot cure the prejudice for purposes of summary judgment. The Governor and Plaintiffs have already submitted motions for summary judgment, so any "cure" would require the Court to re-open discovery, allow the Governor to take a second deposition of Mr. Passamaneck, possibly submit a new rebuttal report for Mr. Passamaneck's supplemented opinion, possibly submit a new motion to exclude his opinions, and re-brief summary judgment.

Courts in the Tenth Circuit have determined that such a process cannot cure prejudice at the summary judgment stage. *See, e.g.*, *Clean Harbors, Inc. v. CBS Corp.*, 875 F. Supp. 2d 1311, 1317 (D. Kan. 2012) ("[A]llowing CBS the opportunity to cure this prejudice would require reopening discovery, re-briefing the pending summary judgment motion, and possibly scheduling trial to begin on a later date than it otherwise would have."); *Bradshaw v. Am. Airlines, Inc.*, No. 4:22-CV-306-CVE-CDL 2023, WL 3147904, at *4 (N.D. Okla. Apr. 28, 2023) ("The defendants have, in a timely manner, issued discovery, taken depositions, disclosed their expert, produced their expert report, attended the settlement conference, and fully briefed and filed their Motions for Summary Judgment and Motions in Limine. Reopening discovery would further prejudice the defendants by requiring, at a minimum, expert discovery, an expert

---

[5] Disclosing a supplemental expert report after the opposing party has deposed that expert is particularly prejudicial. *Cf. Fed. Trade Comm'n v. Nudge, LLC*, No. 2:19-cv-00867, 2022 WL 823933, at *5 (D. Utah, Mar. 18, 2022) ("[C]ourts have declined to exclude untimely expert reports and late-disclosed expert opinions where the disclosures occurred before expert depositions and well in advance of trial.").

deposition, amendment to the defendants' expert report, and repetitive motion practice." (citations omitted)); *Martinez v. Target Corp.*, No. 07-CV-295 JEC/WDS, 2009 WL 10681491, at *2 (D.N.M. Mar. 4, 2009) ("Further, the Court finds that Plaintiff offers no persuasive argument or evidence that the prejudice to defendant could be cured, as discovery would need to be reopened and summary judgment briefing would have to be done anew.").

*Third*, not striking the Passamaneck MSJ Declaration would disrupt consideration of the cross-motions for summary judgment, for the same reasons outlined in the second factor. Allowing Plaintiffs to use an untimely, undisclosed, and contradictory supplemental expert report "would disrupt both the Court's consideration of [the Governor's] *Daubert* and summary judgment motions and trial." *Harris v. Remington Arms Co., LLC*, 398 F. Supp. 3d 1126, 1136 (W.D. Okla. 2019); *see also Henderson v. Nat'l R.R. Passenger Corp.*, 412 F. App'x 74, 83 (10th Cir. 2011) (affirming a district court's decision to strike a supplemental expert report that was submitted eight days before the discovery deadline and on the same day that the party moved for summary judgment because the report "disrupt[ed] the litigation").[6]

*Finally*, the Governor does not allege that Plaintiffs intentionally acted in bad faith by submitting the Passamaneck MSJ Declaration. But "good faith alone does not suffice to overcome the other factors." *Girard Offices, LLC v. Am. Zurich Ins. Co.*, No. 19-cv-03590-PAB-MEH, 2022 WL 4467240, at *14 (D. Colo. Sept. 26, 2022).

---

[6] Unlike in *JBS*, where there was no disruption, in part because the party claiming prejudice "failed to raise [the] issue concurrently with its briefing on its motion for summary judgment," 2016 WL 3078719, at *3 (quotation omitted), the Governor submits this Rule 37(c) motion concurrently with his response to Plaintiffs' Motion for Summary Judgment.

Because the Passamaneck MSJ Declaration is untimely and contains opinions not included in his original report, it is Plaintiffs' obligation to show that the *Woodworker's* factors do not preclude the Declaration's exclusion. *Vanderlaan*, 2023 WL 4441518, at *8. Plaintiffs will not be able to do so.

## CONCLUSION

The purpose of Rule 26 is "the elimination of unfair surprise to the opposing party and the conservation of resources." *Beller ex rel. Beller v. United States*, 221 F.R.D. 696, 700 (D.N.M. 2003) (quotations omitted). "Thus, any prior undisclosed opinions set forth in a declaration submitted to support or oppose a summary judgment is inadmissible, absent a showing the nondisclosure was justified or harmless under Rule 37(c)(1)." *Oklahoma v. Tyson Foods, Inc.*, No. 05-CV-329-GKF-PJC, 2009 WL 2252129, at *5 (N.D. Okla. July 24, 2009).

After the Governor deposed Plaintiffs' sole expert witness and submitted a Rule 702 motion, Plaintiffs now rely on an untimely and contradictory supplemental expert report in their attempt to move for summary judgment. The Court should not allow Plaintiffs to skirt their discovery obligations. The Governor respectfully requests that the Court grant the Governor's motion to strike the Passamaneck MSJ Declaration under Federal Rule of Civil Procedure 37(c).

DATED: October 13, 2023.

                                          PHILIP J. WEISER
                                        Attorney General

                                        *s/ Daniel R. Magalotti*
                                        LEEANN MORRILL*
                                        First Assistant Attorney General
                                        EMILY B. BUCKLEY*
                                        Senior Assistant Attorney General
                                        PETER G. BAUMANN*
                                        Assistant Attorney General
                                        DANIEL R. MAGALOTTI*
                                        Assistant Attorney General Fellow
                                        Colorado Attorney General's Office
                                        1300 Broadway, 6th Floor
                                        Denver, Colorado 80203
                                        Telephone: (720) 508-6000
                                        Email: leeann.morrill@coag.gov
                                                      emily.buckley@coag.gov
                                                      peter.baumann@coag.gov
                                                      daniel.magalotti@coag.gov
                                        *Attorneys for Defendant Governor*
                                         *Jared S. Polis*
                                        *Counsel of Record

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2023, I served a true and complete copy of the foregoing **GOVERNOR'S MOTION TO STRIKE PLAINTIFFS' SUMMARY JUDGMENT DECLARATION OF MR. MARK PASSAMANECK UNDER FEDERAL RULE OF CIVIL PROCEDURE 37(c),** upon all parties herein by e-filing with the CM/ECF system maintained by the court and/or email, addressed as follows:

Eric Paul Apjoke
Shaun Pearman
Pearman Law Firm, P.C.
4195 Wadsworth Blvd.
Wheat Ridge, CO 80033
eric@pearmanlawfirm.com
shaun@pearmanlawfirm.com

Barry Kevin Arrington
Arrington Law Firm
3801 East Florida Ave., Suite 830
Denver, CO 80210
barry@arringtonpc.com

*Attorneys for Plaintiffs*

*s/* Daniel R. Magalotti
*Daniel R. Magalotti*