IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 22-cv-01866-GPG-SKC

BENJAMIN GATES,
TRAVIS SWARTZ,
KARL HONEGGER, and
NATIONAL FOUNDATION FOR GUN RIGHTS, INC.,

    Plaintiffs,

v.

JARED S. POLIS, in his official capacity as Governor of the State of Colorado,

    Defendant.

## ORDER

Before the Court are three motions: (1) Defendant's Motion to Partially Strike Expert Report and Partially Exclude Testimony of Mr. Mark Passamaneck under Federal Rule of Evidence 702 (the Rule 702 Motion) (D. 56), (2) The Governor's Motion to Strike Plaintiffs' Summary Judgment Declaration of Mr. Mark Passamaneck under Federal Rule of Civil Procedure 37(c) (the Rule 37(c) Motion) (D. 92), and (3) The Governor's Renewed Motion for Ruling that Fact Stipulations from Previous Cases are not Binding (the Renewed Motion for Ruling) (D. 93). For the following reasons, the Rule 702 Motion is GRANTED, the Rule 37(c) Motion is DENIED AS MOOT, and the Renewed Motion for Ruling is GRANTED.

## I.  FACTUAL BACKGROUND

Plaintiffs Benjamin Gates, Travis Swartz, Karl Honegger, and National Foundation for Gun Rights, Inc. (collectively, Plaintiffs) filed this suit to challenge Colorado Revised Statutes § 18-12-302, which, with some exceptions, prohibits sales, transfers, and possession of "large-capacity magazine[s]." The term "large capacity magazine" is statutorily defined. *See* C.R.S. § 18-12-301(2). It includes any "fixed or detachable magazine, box, drum, feed strip, or similar device capable of accepting, or that is designed to be readily converted to accept, more than fifteen rounds of ammunition."[1]  *Id.*

Plaintiffs engaged Mark Passamaneck—a mechanical engineer—to render an expert opinion in this matter. In his report, Mr. Passamaneck opined on two subjects: (1) the number of magazines in the United States capable of holding more than 15 rounds of ammunition and (2) the durability and operation of firearm magazines (*see* D. 56-1). But Defendant Governor Jared S. Polis (Defendant) contends that Mr. Passamaneck's opinion on the first subject does not meet Federal Rule of Evidence 702's requirements and is thus inadmissible (*see* D. 56). Relatedly, Defendant moved to strike a declaration filed on behalf of Mr. Passamaneck in support of Plaintiffs' Motion for Summary Judgment (D. 76-8), characterizing it as an untimely supplemental expert report that exceeds the permissible bounds of supplementation (*see* D. 92). Defendant has also moved the Court for an order stating that Defendant will not be bound by stipulations from earlier litigation (D. 93). For their part, Plaintiffs argue that Mr. Passamaneck is qualified to render an expert opinion and that his opinion is otherwise allowable under Federal Rule of Evidence 702

---

[1] C.R.S. § 18-12-301(2) contains further subsections applying to magazines capable of holding shotgun shells. These provisions are not directly relevant to this Order.

(D. 60). Further, they dispute Defendant's characterization of Mr. Passamaneck's summary judgment declaration (D. 104). Finally, they agree that stipulations from earlier cases do not bind Defendant (D. 103).

## II. ANALYSIS

### A. The Rule 702 Motion

The trial court must act as a gatekeeper by reviewing a proffered expert opinion for relevance pursuant to Federal Rule of Evidence 401 and reliability pursuant to Federal Rule of Evidence 702. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589–95 (1993). The expert's proponent must demonstrate by a preponderance of the evidence that the expert's testimony and opinion are admissible. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). Discretion to evaluate whether an expert is helpful, qualified, and reliable under Rule 702 lies with the Court. *See Goebel v. Denver & Rio Grande W.R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000).

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

To determine whether expert testimony is admissible, a court must determine whether: (1) the expert is qualified; (2) the expert's proffered opinion is reliable; (3) the expert's testimony

is relevant; and (4) the proffered testimony will assist the trier of fact.  *See Bethel v. Berkshire Hathaway Homestate Ins. Co.*, No. 17-CV-01456-CMA-KLM, 2022 WL 1037572, at *2 (D. Colo. Apr. 1, 2022); *103 Invs. I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006); *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122–23 (10th Cir. 2006).  An expert is qualified if they have the "knowledge, skill, experience, training, or education" to render an opinion.  *Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2020) (citing Fed. R. Evid. 702).  Stated differently, an expert must "possess 'such skill, experience or knowledge in [the] particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth.'"  *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (quoting *Graham v. Wyeth Labs.*, 906 F.2d 1399, 1408 (10th Cir.1990)).  "The heart of expert testimony is the *foundation*.  Whether a witness can parrot the *results* of a model does not mean that he is qualified to explain how the model works or to opine on the statistical validity or the interpretation of the results."  *Id.* (emphasis in original).

Here, Defendant asserts that Mr. Passamaneck is not qualified to opine on the number of large capacity magazines (LCMs) in circulation in the United States, and that Mr. Passamaneck's opinions on this subject are otherwise inadmissible under Rule 702.[2]  The Court agrees that Mr. Passamaneck is not sufficiently qualified, and so does not reach the other portions of the Rule 702 analysis.

Relying on industry surveys and the estimates of magazine manufacturers (including estimates received via Facebook messages from an acquaintance who serves as an executive of

---

[2] The Court uses this term in its statutory sense (i.e., to refer to magazines capable of accepting 16 or more rounds). It does not intend to convey any opinion as to whether a magazine is uncommon, unusual, or somehow atypical simply because it can accept more than 15 rounds of ammunition.

one such manufacturer (*see* D. 56-2 at 41)), Mr. Passamaneck opined that "there certainly [are] close to 100 million handgun magazines in the US that are over 15 rounds," that there are approximately "250 million rifle magazines over 15 rounds," and that "[f]rom one third to one half of all US gun owners surely own a magazine that is over 15 rounds" (*see generally* D. 56-1).[3]  But nothing in the record suggests that Mr. Passamaneck has the "knowledge, skill, experience, training, or education" to analyze and apply the information his report relies on.  Instead—as he candidly acknowledged when deposed—Mr. Passamaneck is merely parroting the impressions, research, and views of others.

Mr. Passamaneck's expert report, which he agreed "includes the full basis" for these estimates (*see* D.56-2 at 3), summarizes his qualifications as follows:

> Mr. Passamaneck has extensive knowledge of firearms desing [sic], manufacture and use.  He has designed magazines, barrels, muzzle devices, gas blocks and complete firearms for manufacturers.  Mr. Passamaneck has extensively tested firearms, ammunition, and accessories.  He has conducted shooting reconstructions related to both intentional and unintentional firing of firearms.  Mr. Passamaneck has been admitted in courts as a firearms expert and as a ballistics expert.  He holds several training certifications and has trained and coached shooting in a wide array of disciplines.

(D. 56-1 at 4).

Though Mr. Passamaneck did not append his résumé to his report, counsel for Defendant located a copy on his firm's website. According to his résumé, Mr. Passamaneck "is a mechanical engineer with eighteen years of experience in the forensic field.  His forensic background includes the investigation of commercial and residential mechanical products and systems and associated

---

[3] Even if the Court were to conclude that Mr. Passamaneck was qualified to opine on the number of LCMs in circulation, the Court would have serious concerns about his methodology (if you could call it that).

failures, damages and injury causation" (D. 56-3 at 2).  In the same document, Mr. Passamaneck indicates that his "practice areas" include "mechanical, plumbing, and automotive" engineering, that he received a Bachelor of Science degree in mechanical engineering from the University of Colorado at Denver, and that he completed some "Master's level coursework" in mechanical engineering at the University of Colorado (*id.*).  Mr. Passamaneck's résumé also discloses various licenses and certifications relating to such things as plumbing, boiler maintenance, hazardous waste responses, vehicle parts design, and vehicle fire investigations (*id.*).  Further, and perhaps more relevant to his proffered expert opinion, Mr. Passamaneck's résumé states that he is the President of Carbon Arms Corporation and that he has "extensive knowledge related to firearms, cartridge reloading and shooting incidents" (*id.*).

When deposed, Mr. Passamaneck elaborated on some of the items in his résumé.  While he noted that a longer version of his résumé—which had not previously been disclosed to Defendant—delved into his work with firearms in greater detail, he agreed that the résumé featured on his firm's website was "honest in its description of [his] work" (D. 56-2 at 6).[4]  When discussing his master's coursework, Mr. Passamaneck stated that it included classes on "numerical methods, "vibrations," "advanced thermodynamics," "internal combustion engines," "mechanics and materials" and potentially one or two other subjects (*id.* at 8).  And when explaining his résumé's

---

[4] Plaintiffs filed Mr. Passamaneck's extended résumé —including a "firearms supplement"—as an attachment to his summary judgment declaration (D. 76-8 at 5–6).  Its contents do not change the Court's view on Mr. Passamaneck's qualifications (or lack thereof).  Mr. Passamaneck's extended résumé does not demonstrate that he is qualified to opine upon and apply others' survey data.  The same is true of the summary of Mr. Passamaneck's qualifications included in his declaration (D. 76-8 at 1–2).  Even if the Court could consider this summary (Defendant argues that it should not), it would add little to the Court's analysis.  The summary's most compelling point is that ten years ago, Mr. Passamaneck's company sold LCMs, so Mr. Passamaneck understands the market for LCMs.  But even so, there is a disconnect between Mr. Passamaneck's purported understanding of the LCM market and his qualifications to understand and apply the survey data his report relies upon.

statement that he had "extensive knowledge related to firearms, cartridge reloading and shooting incidents," Mr. Passamaneck testified that this was "a broad catchall" and that he has "been a competitive shooter since [he] was basically 21 years old," that he "hunt[s]" and "coach[es] a track team," and that he "consume[s] mass amounts of information and data" related to the use of firearms and self-defense (*id.* at 9).  He also explained that Carbon Arms Corporation "made several pieces of equipment for competition shooting" and, at least at one point, manufactured magazines (*id.*).

Though Mr. Passamaneck has served as an expert witness in at least 150 cases, his work has always related to mechanical engineering and/or forensic shooting reconstructions (*id.* at 5). It does not appear from the record that Mr. Passamaneck has ever been asked to opine on the number of LCMs (or to derive an estimate of anything, based on survey data) before Plaintiffs engaged him in this case.  By his own admission, Mr. Passamaneck is not a statistician, and has no training in survey design (*id.* at 10).  When asked whether he was qualified to research "the number of firearms and/or magazines," Mr. Passamaneck admitted he was not: "No.  That's why I quote other people who do that research" (*id.* at 6).  In the same vein, Mr. Passamaneck agreed that he was "not qualified to opine on survey methodology," that he is "not a survey expert" and that he lacks any "specialized knowledge of survey mechanics" (*id.* at 23–24).  Mr. Passamaneck did contend that he was qualified to evaluate (as opposed to conduct) research forming the basis of firearm- and magazine-number estimates, but his explanation was simply that "I've been involved in the firearms industry for 25 or 30 years.  As far as running matches and training, you know, variety of aspects" (*id.* at 6).  (He also later offered attending industry trade shows and conversing with firearms manufacturers as an additional basis for his expertise (*id.* at 41)).  But it is not clear

7

to the Court how such generalized involvement in the firearms industry would qualify Mr. Passamaneck to perform the analysis he actually did—which turned on interpreting and applying survey data and estimates provided by others.

Courts have excluded expert opinions resting on similarly deficient foundations. In *Fish v. Kobach*, for example, the court concluded that the defendant's expert "was not qualified to testify as an expert" about certain survey data because the defendant failed to demonstrate that the expert "possese[d] any special skill or experience required to testify about the survey results." 304 F. Supp. 3d 1027, 1038 (D. Kan. 2018). In reaching this conclusion, the court relied on the expert's admissions that he was neither a social scientist nor a historian and had taken only a single undergraduate class on statistics. *Id.* It also observed that the expert did not participate in designing or conducting the survey forming the basis of his report, and that the report—other than one paragraph—simply regurgitated the survey's findings. *Id.* Here too Mr. Passamaneck disclaimed any sort of particular expertise in explaining or applying survey data. And his report (other than some potentially incorrect calculations derived from survey and third-party data) consists exclusively of others' findings. Mr. Passamaneck is not qualified to opine as an expert for essentially the same reasons as the expert in *Fish*.

Plaintiffs attempt to paper over shortcomings in Mr. Passamaneck's formal training and education by overleveraging Mr. Passamaneck's general experience in the firearms industry. But the gap between Mr. Passamaneck's involvement in the firearms space and the analysis he actually purported to perform is disqualifying. While—as here—experts may offer their experience as the sole basis for their testimony, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that

8

experience is reliably applied to the facts." *Nacchio*, 555 F.3d at 1258 (quoting Fed. R. Evid. 702 advisory committee's note (2000)). Mr. Passamaneck did none of those things, and it is not apparent how Mr. Passamaneck's experience (including competition shooting, training others in competition shooting, designing firearms components, forensically reconstructing shooting incidents, reading articles, attending industry trade shows, or even previous experience in selling LCMs) relates at all to interpreting and using survey data.

Plaintiffs have failed to establish that Mr. Passamaneck is qualified by knowledge, skill, experience, training, or education to opine on the number of LCMs in circulation. The Court therefore declines to consider Mr. Passamaneck's opinions on this subject in ruling on the parties' competing motions for summary judgment. That said, the Court acknowledges Plaintiffs' position that "whether [LCMs] are in common use . . . is the central issue in this case" (D. 60 at 1). While the Court will not rule on how this question fits into the analysis outlined by the United States Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) at this juncture (or who bears the burden of proof on this issue), the Court believes it would be inappropriate—given the societal importance of this case—to preclude Plaintiffs from adducing expert testimony on what they believe to be a critical issue based on procedural infirmities. Simply put, both parties should be satisfied that the record is complete before the Court decides the merits of Plaintiffs' claims. Accordingly, the Court would be receptive to a limited request to reopen expert discovery.

The Court recognizes that the parties have already fully briefed their cross motions for summary judgment and have already engaged in extensive expert discovery (including depositions). Reopening expert discovery would necessarily delay these proceedings and would

result in certain inefficiencies (including the need for further supplemental briefing on the motions for summary judgment). Should Plaintiffs wish to retain a substitute expert to opine on the number of LCMs in circulation, the Court would appreciate the parties' views on how these inefficiencies could be mitigated. To this end (and only if Plaintiffs wish to retain another expert) the Court requires that the parties submit a joint plan for conducting further expert discovery and briefing no later than **January 31, 2024.**

### B.  The Rule 37(c) Motion

Defendant moved under Federal Rule of Civil Procedure 37(c) to strike a declaration submitted on Mr. Passamaneck's behalf in support of Plaintiffs' motion for summary judgment. Defendant contends that the Court should construe this declaration as an untimely supplemental expert report that exceeds the bounds of permissible supplementation.

These concerns are largely moot in light of the Court's conclusion that Mr. Passamaneck is not qualified to opine as an expert on the number of LCMs in the United States. In ruling on a motion for summary judgment, a court need not consider evidence that cannot be presented in an admissible form. Fed. R. Civ. P. 56(c)(2). Here, the Court concluded that Mr. Passamaneck's opinions on the number of LCMs are inadmissible under Federal Rule of Evidence 702. Under these circumstances, the Court need not credit Mr. Passamaneck's declaration (at least to the extent that it opines on LCM numbers). *See Lasermarx, Inc. v. Hamskea Archery Sols. LLC*, No. 22-CV-01956-NYW-KAS, 2023 WL 6314562, at *6 (D. Colo. Sept. 28, 2023) (declining to consider purportedly "undisputed facts" derived from the declarations of "individuals who have not been qualified as experts pursuant to Rule 702 of the Federal Rules of Evidence"); *Nelson v. Costco Wholesale Corp.*, No. 21-5666, 2022 WL 221638, at *2 (6th Cir. Jan. 26, 2022) (recognizing that

the parties may invoke Federal Rule of Evidence 702 at the summary judgment stage to preclude the court from considering expert opinions); *GPF Waikiki Galleria, LLC v. DFS Grp., L.P.*, No. CV 07-00293DAE-LEK, 2007 WL 3195089, at *7 (D. Haw. Oct. 30, 2007) (striking the summary judgment declaration of a purported expert after concluding that the purported expert was not qualified under Federal Rule of Evidence 702).

The Court notes that some of the individual statements that Defendant challenges in Mr. Passamaneck's declaration fall slightly outside the scope of his expert report. For example, Mr. Passamaneck opined that National Shooting Sports Foundation's (NSSF) estimate that there are at least 79 million LCMs in the United States is "highly reliable," when his actual report expresses no explicit view on the reliability of NSSF estimates (*compare* D. 76-8 at 3 *with* D. 56-1). But the Court concludes that Mr. Passamaneck is not qualified to opine on these subjects for the same reasons that he is not qualified to opine on the number of LCMs more generally. Accordingly, the Court will not consider Mr. Passamaneck's statements about the NSSF's estimates, his commentary on stipulations as to LCM numbers in other litigation, or Mr. Passamaneck's conclusions as to overall LCM numbers.

Defendant did not specifically attack the other substantive portions of Mr. Passamaneck's declarations, either on Federal Rule of Evidence 702 or Federal Rule of Civil Procedure 37(c) grounds. These components of his declaration relate to the operation of firearm magazines (*see* D. 76-8 at 2–3). Though the Rule 37(c) Motion facially seeks an order striking Mr. Passamaneck's declaration in full, the Court does not find that this relief is warranted.[5] Accordingly, the Court

---

[5] These portions of Mr. Passamaneck's declaration largely track his expert report. Mr. Passamaneck also testified on these subjects during his deposition. Applying the factors detailed in *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999), the Court finds that these statements are not properly excluded under Federal Rule of Civil Procedure 37(c), including because Defendant cannot credibly claim prejudice or surprise.

will strike all but the following portions of Mr. Passamaneck's declaration: paragraphs 1, 2,[6] 3, and 4.

### C. The Renewed Motion for Ruling

Defendant also seeks a ruling that he is not bound by stipulations in earlier firearms-related litigation. Plaintiffs agree that these stipulations are not binding on Defendant. Plaintiffs' agreement is sufficient for the Court to hold that such stipulations are not conclusively binding. *See United States v. Botefuhr*, 309 F.3d 1263, 1282 (10th Cir. 2002) (holding that the question of whether a party is bound by prior stipulations is a matter of issue preclusion); *Valley Imp. Ass'n, Inc. v. U.S. Fid. & Guar. Corp.*, 129 F.3d 1108, 1120 (10th Cir. 1997) (recognizing that a party claiming the benefits of the doctrine of the issue preclusions bears "the burden of establishing all facts necessary for its application"). Though the Court holds that Defendant (or any party for that matter) is not bound by stipulations entered into outside of this litigation, this simply means that the typicality of LCMs in society remains a litigable issue—it does not mean that prior stipulations cannot be used as *evidence* on the typicality issue. *See Asarco, LLC v. Noranda Mining, Inc.*, 844 F.3d 1201, 1212 (10th Cir. 2017) (distinguishing between "judicial admissions" and "ordinary evidentiary admissions").

---

[6] Defendant characterizes this paragraph as an impermissible after-the-fact attempt to bolster Mr. Passamaneck's expert qualifications. The Court agrees that this paragraph contains information not cited in Mr. Passamananeck's expert report. But Mr. Passamaneck's supplemental firearms résumé (which was disclosed during his deposition) and deposition testimony included this information. Defendant had access to these materials when he filed the Rule 702 Motion. The Court does not find that the contents of this paragraph worked any prejudice upon (or would have unfairly surprised) Defendant. Ultimately, these additional purported qualifications do not change the Court's views on the Rule 702 issues, however.

## IV.  CONCLUSION

Based on the foregoing, the Rule 702 Motion (D. 56) is GRANTED, the Rule 37(c) Motion (D. 92) is DENIED AS MOOT, and the Renewed Motion for Ruling (D. 93) is GRANTED. Because the Court concludes that Mr. Passamaneck is not qualified to opine on the number of LCMs in the United States, the Court STRIKES his declaration, with the exception of paragraphs 1, 2, 3, and 4.  It is further ORDERED that—should Plaintiffs wish to engage an expert to opine on the number of LCMs in the United States—the parties shall submit a joint plan for conducting further expert discovery and briefing no later than January 31, 2024.

DATED December 6, 2023.

BY THE COURT:

Gordon P. Gallagher
United States District Judge